Stephen P. GIANOLI, Nancy L. Gianoli, Richard A. Carlson and Genevieve A. Carlson, Plaintiffs-Respondents,

v.

John Ronald PFLEIDERER and Margo Ellen Pfleiderer, Defendants-Appellants.†

Court of Appeals

*No. 95–2867. Submitted on briefs November 27, 1996.—Decided March 25, 1997.*

(Also reported in 563 N.W.2d 562.)

†Petition to review denied.

509

On behalf of defendants-appellants, the cause was submitted on the briefs of *James R. Bartholomew* of *Bartholomew Law Office, S.C.* of Hudson.

On behalf of plaintiffs-respondents, the cause was submitted on the brief of *Phillip M. Steans* of *Phillip M. Steans, S.C.* of Menomonie.

Before Cane, P.J., Myse and Carlson,[1] JJ.

CARLSON, J. John and Margo Pfleiderer appeal a judgment awarding compensatory and punitive damages as well as injunctive relief to the respondents[2] in this dispute between neighboring property owners. The Pfleiderers claim the court erroneously awarded compensatory and punitive damages against them, improperly made the punitive damages conditional, and imposed unreasonable restrictions on the use of their land as part of the injunctive relief. The Pfleiderers also assert that the trial court improperly dismissed their counterclaims.

We conclude that there is sufficient evidence in the record to support the compensatory damage award in this case. We also conclude that the punitive damages assessed were appropriate. However, we reverse that part of the injunctive relief enjoining the parties from excluding each other from the portion of their properties between the ordinary low and high water marks. Finally, we conclude that the Pfleiderers' counterclaims were properly dismissed. Accordingly, the judgment is affirmed in part and reversed in part.

---

[1] Circuit Judge Gary L. Carlson is sitting by special assignment pursuant to the Judicial Exchange Program.

[2] This opinion will refer to Stephen and Nancy Gianoli and Richard and Genevieve Carlson collectively as "the respondents."

## FACTS

The parties in this case are adjoining landowners in the St. Croix Cove subdivision in the town of Troy, Wisconsin. The subdivision contains a permanent easement over the Pfleiderer lot for "ingress and egress for driveway purposes only, forever" for the benefit of the adjoining lots, owned by the respondents.

The relationship between the Pfleiderers and the respondents deteriorated early. In fact, this is not the first legal skirmish involving these parties. A previous round of litigation on other issues reached this court in 1993. *See Pfleiderer v. St. Croix Board of Adjustment*, No. 93–0396, unpublished slip op. (Wis. Ct. App. Aug. 17, 1993).

This initial round of litigation did nothing to ameliorate the relationship between the parties. Further disputes arose concerning the cutting of vegetation, river diversion and erosion, interference with beach use and the violation of construction regulations. The Pfleiderers also stored numerous vehicles on their property, which the respondents allege interfered with their use of the driveway easement. In addition, the Gianolis alleged that the Pfleiderers interfered with their attempts at refinancing their home, going so far as to send unflattering materials to lenders and others. Finally, disputes arose concerning a variety of obnoxious behavior on the part of the Pfleiderers, including surveillance, unwanted telephone calls, stalking and other generally harassing conduct.

Respondents brought this action originally seeking injunctive and declaratory relief under a variety of causes of action. The complaint was twice amended, adding an action for invasion of privacy. In their amended complaints, respondents sought declaratory and injunctive relief as well as compensatory and puni-

tive damages. The Pfleiderers counterclaimed, alleging that the respondents violated various federal, state and local construction regulations.

Following a trial to the court, the court announced judgment in favor of respondents on their claims for invasion of privacy and intentional infliction of emotional distress. The court made findings on the record and issued additional written findings of fact and conclusions of law. The court granted various forms of injunctive relief and awarded compensatory damages as follows:

| | |
|---|---|
| Genevieve Carlson | $5,000 |
| Richard Carlson | $1,000 |
| Nancy Gianoli | $3,000 |
| Stephen Gianoli | $3,000 |

The court also assessed punitive damages totalling $200,000 ($50,000 for each respondent) against John Pfleiderer. The court found that John's actions were outrageous and that the Pfleiderers' explanations for those actions were totally incredible and unworthy of belief.

In awarding punitive damages, the trial court found that the Pfleiderers were fully capable of paying the punitive damages based upon their financial status. However, the trial court stayed enforcement of the punitive damages for a period of one year and directed that if the Pfleiderers sold their home, closed on the sale, and vacated the property within one year, the punitive damages award would be vacated. The trial court dismissed the counterclaims with prejudice.

## COMPENSATORY DAMAGES

We first address the issue whether the evidence supported the compensatory damages award. We will not disturb a court's compensatory damages award if there is any credible evidence to support the award. *Lundin v. Shimanski*, 124 Wis. 2d 175, 195, 368 N.W.2d 676, 686 (1985). The trial court awarded compensatory damages based on both the invasion of privacy and the intentional infliction of emotional distress claims:

> And I want the record to be clear that if an appeals court were to find that there is an insufficient quantum of evidence to support the burden of proof with regard to the invasion of privacy claim or for some reason that ground is not sufficient or that the intentional infliction of the mental distress ground is insufficient, that it is this court's opinion that those compensatory damages are appropriate regardless of whether they are based on one cause of action or two causes of action or insofar as Mr. and Mrs. Gianoli go, three causes of action.[3]

This oral statement and its written counterpart make clear that if the evidence is sufficient in either or both of the claims for relief, the compensatory damages must be upheld.

However, the Pfleiderers on appeal challenge only the sufficiency of the evidence for the claim of intentional infliction of emotional distress. They have not challenged either the amount or propriety of the com-

---

[3] The Gianolis alleged an additional claim for relief premised upon the Pfleiderers' attempts to undermine the Gianolis' home refinancing.

pensatory damages on the invasion of privacy claim. Because the court made clear that its compensatory damages award applied to either cause of action, the Pfleiderers' failure to challenge the invasion of privacy claim is fatal to their attack on the compensatory damages award. Therefore, the compensatory damages award must stand, and we could end our inquiry here. Nonetheless, because of the role these allegations play in the issue of punitive damages, we believe it is appropriate to review the evidence supporting the intentional infliction of emotional distress claim.

Four factors must be established for an injured person to recover under a claim for intentional infliction of emotional distress:

1. The conduct was intended to cause emotional distress;

2. The conduct was extreme and outrageous;

3. The conduct was a cause of the person's emotional distress, and;

4. The emotional distress was severe and disabling.

*See Alsteen v. Gehl*, 21 Wis. 2d 349, 359-60, 124 N.W.2d 312, 318 (1963); *Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 294 N.W.2d 437 (1980). The third factor is not in dispute. We will examine each factor raised by the Pfleiderers.

The Pfleiderers first contend that their actions were not extreme and outrageous. In order for conduct to reach the standard of being extreme and outrageous, that conduct must be such that an average member of the community would find it to be a complete denial of

the individual's dignity as a person. *Alsteen*, 21 Wis. 2d at 359-60, 124 N.W.2d at 318. Mere carelessness or bad manners is insufficient. *Id.* at 360, 124 N.W.2d at 318. The *Alsteen* court stated that the policy behind these standards was the respect for the human personality. *Id.* at 358, 124 N.W.2d at 317. A person who treats another as an object and deliberately manipulates, humiliates, or scorns that person, should be compelled to compensate that person for any disabling emotional response caused by the conduct. *Id.*

The trial court made extensive oral and written findings of fact concerning the Pfleiderers' conduct. We accept these findings unless they are clearly erroneous. Section 805.17(2), STATS. The court found that the Pfleiderers attempted to derail the Gianolis' refinancing of their home, going so far as to send negative and unflattering information concerning the Gianolis to lenders and others. They also engaged in near constant surveillance of and harassment concerning the respondents. The court also found that John Pfleiderer stalked and followed the respondents without justification and that the Pfleiderers' explanation for their behavior was totally incredible and unworthy of belief. We conclude that these findings, which are not clearly erroneous, support the trial court's conclusion that the Pfleiderers' conduct was extreme and outrageous.

We next turn to the question whether the respondents' distress was severe and disabling. In order for distress to meet this standard, it must be such that the person was unable to function in other relationships. *Alsteen*, 21 Wis. 2d at 360-61, 124 N.W.2d at 318. If the conduct merely caused temporary discomfort, recovery must be disallowed. *Id.* at 361, 124 N.W.2d at 318. We

conclude that the evidence supports the trial court's conclusion that all of the respondents' distress was severe and disabling.

Genevieve Carlson testified that the confrontational situations caused her heart rate and breathing to accelerate to the point where she had to lie down to recover. She also testified to insomnia, depression, fatigue and anxiety. Richard Carlson testified that he had seen a change in his wife's behavior and personality since the confrontations began.

Nancy Gianoli testified that she experienced insomnia, migraine headaches, "asthmatic type" attacks, extreme muscle tension, muscle spasms and indigestion. She further testified that these conditions began when the confrontations with the Pfleiderers started. Stephen Gianoli also testified as to headaches, pain in his arms, diarrhea, insomnia and depression, particularly during the period when he was trying to refinance his home.

Richard Carlson testified that his "level of anxiety" has risen considerably and that he is constantly concerned for his wife's safety, going so far as to change his business practices to avoid leaving his wife alone. While his condition creates a closer question than that of the other respondents, we agree that the distress described is severe and disabling under the circumstances. Significantly, the trial court recognized the less severe nature of his distress and awarded a lesser sum of damages.

██

Finally, regarding the first factor, the Pfleiderers assert that they did not intend to cause the respondents emotional distress. The trial court, however, found that there was "compelling evidence" that the Pfleiderers intended to cause the respondents emo-

tional distress. We conclude that the Pfleiderers' conduct, recited above, supports the inference that the Pfleiderers intended to cause the respondents' emotional distress.

This court will not disturb the trial court's judgment if there is any credible evidence in the record to support it. *Shawver v. Roberts Corp.*, 90 Wis. 2d 672, 681, 280 N.W.2d 226, 230 (1979). We consider the above evidence sufficient to support the compensatory damages award on the intentional infliction of emotional distress claim. Because the Pfleiderers have not challenged the award on the invasion of privacy claim and because the trial court made clear that its compensatory damages award applied to either cause of action, we need not address this issue further.

## PUNITIVE DAMAGES

The Pfleiderers next claim that the court in this case could not award punitive damages because the respondents requested equitable relief. The Pfleiderers assert that a court in equity does not have the power to impose punitive damages. We conclude that it is not necessary to resolve this issue because we conclude that the court awarded punitive damages based upon the respondents' actions for intentional infliction of emotional distress and invasion of privacy, which are actions at law.

The respondents' original complaint alleged numerous equitable claims, but also stated a cause of action for intentional infliction of emotional distress. The second amended complaint added another action at law for invasion of privacy. Both complaints requested compensatory and punitive damages on

these causes of action. The court in its decision made clear that it was awarding the punitive damages "because of [Mr. Pfleiderer's] extreme outrageous conduct," and not upon the equitable causes of action contained in the complaints. Because the punitive damages were awarded pursuant to the respondents' actions at law, we conclude that such damages were available to the trial court in this case.[4]

Having determined that punitive damages are available, we now turn to the question whether the court appropriately awarded punitive damages. We will not overturn a punitive damages award if there is any credible evidence in the record to support it. *Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 398, 541 N.W.2d 753, 765 (1995).

The foundation for a punitive damage award is proof of outrageous conduct by the wrongdoer. *Brown v. Maxey*, 124 Wis. 2d 426, 431, 369 N.W.2d 677, 680 (1985). Outrageous conduct is conduct that is malicious or in wilful or reckless disregard of the plaintiff's rights. *Wangen*, 97 Wis. 2d at 275, 294 N.W.2d at 446. We have previously described the Pfleiderers' conduct. We are satisfied that it was outrageous, malicious and in reckless disregard of the respondents' rights.[5] We

---

[4] We do not address the Pfleiderers' argument that punitive damages are not available in equitable actions. However, we note that this court has previously held that "it is within the discretion of the trial court acting in equity to award punitive damages." *White v. Ruditys*, 117 Wis. 2d 130, 142, 343 N.W.2d 421, 426 (Ct. App. 1983).

[5] The Pfleiderers assert that punitive damages are not available in an action for invasion of privacy under § 895.50, Stats. However, the trial court's findings of fact and conclusions

therefore conclude that the trial court did not err by awarding punitive damages.

Next we consider the amount of punitive damages awarded by the court. In determining the appropriate amount of punitive damages, a trial judge must apply the same factors a jury would apply. *White v. Ruditys*, 117 Wis. 2d 130, 142, 343 N.W.2d 421, 426 (Ct. App. 1983). Those factors are the grievousness of the wrongdoer's acts, the degree of malicious intent, the potential damage that might have been caused by such acts as well as the actual damage caused, and the defendant's ability to pay. *Id.* We have previously summarized the Pfleiderers' conduct, the intentions behind their actions, and the grievous effects it had on the respondents. The trial court explicitly found the Pfleiderers' conduct to be extreme and outrageous and specifically found the Pfleiderers capable of paying the award. We are satisfied that the trial court considered the necessary factors in determining the amount to be awarded, and that the award is supported by the evidence.

The Pfleiderers next assert that the punitive damages award is unconstitutionally excessive. The due process clause of the Fourteenth Amendment imposes substantive limits on the size of punitive damage awards. *TXO Produc. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 453-54 (1993); *Management Com-*

---

of law make clear that it was awarding punitive damages based upon John Pfleiderer's conduct, which formed the basis of *both* the invasion of privacy and the intentional infliction of emotional distress claims. Because the trial court could properly award punitive damages based upon the intentional infliction of emotional distress claim, we need not address the Pfleiderers' argument.

*puter Servs. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 157, 192, 557 N.W.2d 67, 81 (1996). Punitive damages can properly be imposed to further a state's interests in punishing and deterring wrongdoing. *Id*. at 192, 557 N.W.2d at 82.

A punitive damages award is excessive and therefore unconstitutional if it is more than is necessary to serve the purposes of punitive damages, or inflicts a penalty or burden on the defendant that is disproportionate to the wrongdoing. *Id*. at 192, 557 N.W.2d at 81. In *BMW of North America v. Gore*, 116 S.Ct. 1589 (1996), the United States Supreme Court articulated three factors for reviewing a punitive damage award in light of the constitutional proscriptions: the degree of reprehensibility of the wrongdoer's conduct, the relationship of the amount of actual harm to the punitive damages, and the comparable civil or criminal penalties available for such conduct. *Id*. at 1598-1603; *see also Management Computer*, 206 Wis. 2d at 193, 557 N.W.2d at 82. We will examine each consideration in turn.

The degree of reprehensibility is manifest in light of the court's findings on John Pfleiderer's conduct. John engaged in acts of intentional misconduct; these were not mistakes or mere acts of negligence. His explanations were specifically found to be unworthy of belief. We conclude that his conduct was sufficiently reprehensible to warrant imposition of the $50,000 in punitive damages for each respondent.

We turn next to the relationship or ratio of the actual damages to the punitive damages. The essential concept is that there should be a reasonable relation-

ship between the amount of the punitive damages award and the amount of the compensatory damages award, which represents the actual harm caused by the wrongdoer's conduct. *TXO*, 509 U.S. at 460. We have often stated that there is no bright line or mathematical formula for calculating punitive damage awards. *Management Computer*, 206 Wis. 2d at 193-94, 557 N.W.2d at 82.

In *BMW* the court found the 500 to one ratio in favor of Gore was excessive. The ten to one ratio in *TXO* was not.[6] The Wisconsin Supreme Court in *Management Computer* rejected an award over twenty-five times the amount awarded as compensatory damages, but approved an award ten times greater. *Id.* at 195, 557 N.W.2d at 83. Here the punitive damages are fifteen times the compensatory damages. However, the court found the Pfleiderers' actions in this case to be particularly outrageous. As stated in *BMW*:

> [L]ow awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine.

---

[6] The 10 to one ratio approved in *TXO Produc. Corp. v. Alliance Resources Corp.*, 509 U.S. 443 (1993), represents the ratio of punitive damages to the potential harm suffered by the plaintiffs in that case. The ratio of punitive damages to actual damages, represented by the compensatory damages award, was over 500 to one. *Id.* at 459-60.

*Id*. at 1602. Given the court's findings of extreme outrageous conduct, we conclude that the higher ratio was well within the court's discretion. This is not a situation in which a runaway jury awarded mind-boggling punitive damages that require a reining in by a judge. *See Wangen*, 97 Wis. 2d at 306-07, 294 N.W.2d at 461. Here the court acted as the trier of fact and made extensive findings as to the Pfleiderers' actions and the degree to which these actions were outrageous. The punitive damages award was certainly intended to "sting" in order to make John Pfleiderer think about his past and potential future conduct. This is entirely appropriate: Our supreme court has stated that an award of "Punitive damage[s] ought to serve its purpose." *Malco, Inc. v. Midwest Alum. Sales*, 14 Wis. 2d 57, 66, 109 N.W.2d 516, 521 (1961).

The final indicium of excessiveness is to compare the punitive damages award and the civil or criminal penalties that could have been imposed for comparable misconduct. Many of the Pfleiderers' activities could be construed as violations of state law. Stalking is a violation of § 940.32, STATS. A first offense is a Class A misdemeanor punishable by a fine of $10,000 and nine months in jail. A second offense within seven years is a Class E felony punishable by a fine of $10,000 and two years in prison. Defamation, a violation of § 942.01, STATS., is also a Class A misdemeanor. Trespass to land, a violation of § 943.13, STATS., is a Class B forfeiture, punishable by a forfeiture of $1,000. The court found that the Pfleiderers committed several of these violations a number of times. Each act could also have resulted in various other civil forfeitures. Given the significant financial and incarceration penalties that might have been invoked, we conclude that the finan-

cial aspect of the punitive damages award is not excessive.

In sum, we are convinced that the award imposed in this case is not grossly excessive and does not violate constitutional limitations. We therefore reject the Pfleiderers' constitutional claims.

■

Next, the Pfleiderers contend that the court did not have sufficient evidence before it to adequately determine their ability to pay the punitive damages award. However, the respondents presented evidence to the court showing John Pfleiderer is independently wealthy, does not need to hold employment, and has a substantial net worth. Furthermore, the Pfleiderers had full opportunity to present evidence of their ability to pay, and in fact did present a financial statement to the court detailing their financial status. If the Pfleiderers believed there were other financial considerations important to the court's decision, they had the opportunity and obligation to present those factors to the court. Failing to do so, they cannot complain that the court based its decision on the evidence before it.

The next issue we consider is whether the trial court had the power to make the punitive damages award conditional. This presents a question of law that this court reviews de novo. *See Ball v. District No. 4 Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984). The court in this case stayed enforcement of the collection of the punitive damages against the Pfleiderers for a period of one year. The court indicated that in the event the Pfleiderers sold and moved from their property within that period, the punitive damages award would be vacated. The court's stated intention was to "divorce," or separate, the parties to prevent future disputes.

We find it difficult to understand why the Pfleiderers would object to being given an alternative to the punitive damages. Certainly, if a trial court properly determines that punitive damages should be imposed, no factual or legal objection exists to the effort to ameliorate their effects by providing a means of avoiding them. The trial court could have simply awarded the punitive damages. The Pfleiderers would then have no alternative but to pay the award. The mere act of providing a means to avoid the damages does not make granting them improper.

We also find no fault with the court's stated intention to "divorce," or separate, the parties. This is the essence of the flexibility allowed a court in equity to fashion an appropriate remedy. Under the unique circumstances of this case, the conditional punitive award was a reasoned and appropriate exercise of the trial court's discretion to fashion an appropriate remedy.

## RESTRICTIONS ON THE PFLEIDERERS' USE OF THEIR PROPERTY

The court found the Pfleiderers had created a private nuisance with respect to the number of vehicles stored on the property, interfering with the respondents' use of the driveway easement. As part of its injunctive relief, the court limited the number and type of vehicles the Pfleiderers' could store on the property. The Pfleiderers assert that the court's judgment has insufficient evidentiary support. This court will accept the court's findings of fact unless they are clearly erroneous, § 805.17(2), STATS., and will not overturn the court's judgment if there is any credible evidence in the

record to support it. *Krueger v. Mitchell*, 112 Wis. 2d 88, 104-05, 332 N.W.2d 733, 742 (1983).

A private nuisance is defined as "an unreasonable interference with the interests of an individual in the use and enjoyment of land." *Bubolz v. Dane County*, 159 Wis. 2d 284, 298, 464 N.W.2d 67, 73 (Ct. App. 1990). "The activity complained of must create more than an inconvenience and must be offensive to a person of ordinary and normal sensibilities." *Id.*

The court heard testimony from the respondents and others regarding the manner in which the Pfleiderers parked cars and other vehicles on their lot and the way in which they were stored. The testimony alleged a substantial interference with the respondents' ability to use the driveway easement. We conclude that these facts, which are not clearly erroneous, establish the existence of a private nuisance. We also conclude that the court's injunctive relief was an appropriate remedy aimed at abating the nuisance.

The trial court also enjoined the parties from excluding each other from that portion of their riverfront properties between the ordinary high and low water marks. The Pfleiderers assert that this injunction was improper because their property extends to the actual water line. This presents a question of law this court reviews de novo.

We conclude that the court properly determined that under the public trust doctrine, the state, not the parties, holds title to the beds underlying navigable waters in trust for all of its citizens. *See State v. Trudeau*, 139 Wis. 2d 91, 101, 408 N.W.2d 337, 341 (1987). This includes the area on the shore within the high

water mark. *Id.* at 103, 408 N.W.2d at 342. However, the court failed to consider the limited right of a riparian owner to exclude the public from that area. A riparian owner may prohibit access if doing so does not interfere with the public's navigational rights. *State v. McFarren*, 62 Wis. 2d 492, 498-99, 215 N.W.2d 459, 463 (1974); *Doemel v. Jantz*, 180 Wis. 225, 193 N.W. 393 (1923).

Although the term "navigation" has been enlarged beyond the purpose of navigation in aid of commerce, these enlarged rights do not extend to uses separate and unrelated to navigation:

> Historically, the public right in navigable waters was confined solely to purposes of navigation relating to commerce. *Doemel v. Jantz*, 180 Wis. 225, 229, 193 N.W. 393, 395 (1923). The term "navigation" has since been broadened to include use of the waters for travel, fishing, recreation and hunting, yet the original purpose remains at the heart of the public right. *Id.* Other uses of public waters are merely incidents to navigation, "mere corolar[ies]" to the primary use. *Id.* at 229-30, 193 N.W. at 395.
>
> Thus, a riparian owner's private rights give way only to public measures *in aid of navigation.* In other words, limitations on private rights are imposed to prevent *obstruction of navigation.*

*W.H. Pugh Coal Co. v. State*, 157 Wis. 2d 620, 628, 460 N.W.2d 787, 790 (Ct. App. 1990) (emphasis in original).

There is no indication that the respondents were exercising the right to navigation when entering the river beach adjacent to the Pfleiderers' property between the high and low water marks. The testimony reveals that the respondents would use the area for

walking dogs and "beachcombing," separate and distinct from any navigation upon the river. A riparian owner is not required to allow the public on this area and may properly exclude any members of the public not engaged in navigation. *McFarren*, 62 Wis. 2d at 498-99, 215 N.W.2d at 463. Therefore, we reverse that portion of the injunction that prohibited the parties from excluding each other from that area.

## COUNTERCLAIMS

The Pfleiderers claim that the court's dismissal of their counterclaims on the merits with prejudice was also erroneous. The Pfleiderers brought two counterclaims alleging violations of federal, state and local regulations by the respondents on two construction projects. We are satisfied that the court acted properly. The court heard testimony from the local zoning administrator as well as a representative from the Department of Natural Resources that no violations of the regulations existed. The court was entitled to rely on that testimony in determining there was no violation.

## CONCLUSION

To conclude, we reverse that portion of the trial court's judgment prohibiting the parties from excluding each other from the beach area of their properties between the high and low water marks. We affirm the judgment in every other respect. Because the judgment was stayed pending this appeal, we remand this case to the trial court merely to allow the court to compute the time remaining for the Pfleiderers to exercise their option to either move from the property or pay the punitive damages.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.