No. 2--04--0170

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

RONALD SCHILLER and MERLE
 ) Appeal from the Circuit Court

SCHILLER,
 ) of Lake County.

)

Plaintiffs-Appellants,                               )

)

v.
     ) No. 02--CH--1271

)

BERNARD MITCHELL and ROBERT )

STANLEY,                                                        )     Honorable

                                                               )     David M. Hall,

Defendants-
Appellees.
                               )     Judge, Presiding.
 

______________________________________________________________________________
                                                             

JUSTICE KAPALA delivered the opinion of the court:            
                              

This is an appeal from an order of the circuit court of Lake County dismissing plaintiffs'  five-count second amended complaint with prejudice for failure to state a cause of action.  Count I was based on the theory of common-law intrusion upon the seclusion of another, count II requested injunctive relief, count III alleged a private nuisance, count IV alleged intentional infliction of emotional distress, and count V alleged that defendants were guilty of common-law maintenance.  Plaintiffs argue in this appeal that the trial court erred in dismissing the first four counts of their complaint.  Plaintiffs have not appealed from the dismissal of count V.  We affirm.

 This action arises out of a neighbor dispute.  In their second amended complaint, stated as general allegations and later incorporated into the individual counts, plaintiffs alleged that they live at 2611 Hybernia Drive in Highland Park, Illinois.  Defendants live at 2601 Hybernia Drive, next door to plaintiffs.  Defendant Robert Stanley is on the board of directors of the Hybernia Area Homeowners Association (the Association), which maintains an exhaustive list of rules, regulations, and restrictions governing properties in the Hybernia subdivision.  Sometime after moving into their home in June 1997, plaintiffs noticed that defendants affixed to the southern facade of their house a camera aimed  at the garage, driveway, and side-door area of plaintiffs' home.  In February 2002, the City of Highland Park (city) charged plaintiffs with an ordinance violation following a complaint defendants made to the city.  At the hearing on the ordinance violation, plaintiffs learned that defendants were using the camera to surveil plaintiffs and plaintiffs' property.  A Highland Park police officer testified that he reviewed over two hours of defendants' videotapes of plaintiffs' property, including the interior of their garage.  Plaintiffs believe that defendants use this camera to record their property 24 hours a day.  

According to the complaint, defendants have made "hundreds" of telephone calls to the police, 
complaining about activities in the subdivision, most of them centering on plaintiffs.  As a result, the police have "investigated, questioned, and suspected" plaintiffs.  The police issued in excess of 14 tickets for such things as noise ordinance violations, exterior lighting violations, and a dog running at large.  Plaintiffs were found liable on only three of the complaints.  In addition to the ordinance violations, police twice charged plaintiff Ronald Schiller with misdemeanors arising from defendants' complaints.  One was a disorderly conduct charge for shining a light at defendants' camera; the second one was a disorderly conduct charge for "forcefully exhaling" into defendant Robert Stanley's face.  The former charge was dismissed by the State's Attorney, and the trial judge directed a verdict in Schiller's favor on the latter charge.  

The complaint further alleged that on those occasions when the police refused to act on defendants' complaints, defendants  took their asservations about plaintiffs to other bodies, including the Association, governmental agencies, and their own private attorney, who sent plaintiffs' attorney a letter threatening  "swift and strong" action in the event the attorney found proof that plaintiffs vandalized defendants' property.  In grievances to the Association, defendants accused plaintiffs of driving past defendants' residence, sweeping out plaintiffs' garage in the morning, accidentally dropping a ladder on plaintiffs' own driveway, leaving flowers in boxes at the side of plaintiffs' house, placing flags to locate utilities, and spraying water onto defendants' property from plaintiffs' sprinkler system.  As a result of these numerous complaints, the Association launched many investigations into plaintiffs' activities on their property.

In addition to the  interrogations, administrative inspections, and criminal charges, plaintiffs claimed that they are subjected to an all-hours personal surveillance by defendants, as defendants stand on their property line and stare at plaintiffs.  Plaintiffs alleged they were damaged as a result of defendants
' actions.

Defendants brought a motion to dismiss the second amended complaint pursuant to section  2--619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2--619.1 (West 2002)), which the trial court granted with prejudice.  Plaintiffs filed a timely appeal. 

Defendants moved to dismiss counts I, II, and III pursuant to section 2--615 of the Code.  They moved to dismiss count IV (intentional infliction of emotional distress) pursuant to section 2--619 of the Code.  However, the trial court ruled on count IV on section 2--615 grounds and did not  deal with the affirmative matters defendants raised.  Consequently, we will treat the trial court's dismissal of that count as if it were done pursuant to section 2--615.  

We review 
de
 
novo
 a motion to dismiss under section 2--615
.   
Collins v. Superior Air-Ground Ambulance Service, Inc.
, 338 Ill. App. 3d 812, 815 (2003).  
"The question presented by a section 2--615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted."  
Kumar v. Bornstein
, 354 Ill. App. 3d 159, 164 (2004).  Illinois requires a plaintiff to present a legally and factually sufficient complaint.  
Kumar
, 354 Ill. App. 3d at 164-65.  "The plaintiff is not required to prove his or her case, but must allege sufficient facts to state all the elements of the asserted cause of action."  
Kumar
, 354 Ill. App. 3d at 165.  When ruling on a section 2--615 motion,
 the trial court should deem all well-pleaded facts as true and disregard legal and factual conclusions that are unsupported by allegations of fact.  
Kumar
, 354 Ill. App. 3d at 165.  "We may affirm the dismissal of the amended complaint on any ground supported by the record, regardless of the basis for the trial court's decision."  
Kumar
, 354 Ill. App. 3d at 165.  With these principles in mind, we will examine counts I through IV of the second amended complaint.

                               INTRUSION UPON SECLUSION OF ANOTHER

Plaintiffs alleged that in videotaping their property for the purpose of making frivolous and trivial charges against them, defendants invaded their privacy, which plaintiffs sought to guard by planting large trees and bushes in their backyard.  Specifically, plaintiffs alleged unreasonable intrusion upon the seclusion of another.  We conclude that plaintiffs' complaint fails to state a cause of action because the areas photographed by the camera were not private.

The Restatement (Second) of Torts sets out four privacy torts: (1) intrusion upon the seclusion of another; (2) appropriation of the name or likeness of another; (3) publicity given to private life; and (4) publicity placing a person in a false light.  Restatement (Second) of Torts §652A, at 376 (1977).  The Restatement defines the tort of intrusion upon the seclusion of another as follows: "It consists solely of an intentional interference with [a person's] interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man."  Restatement (Second) of Torts §652B, Comment 
a
, at 378 (1977).  Our supreme court discussed the tort of intrusion upon the seclusion of another in 
Lovgren v. Citizens First National Bank of Princeton
, 126 Ill. 2d 411, 416 (1989).  Although the court declined to hold whether or not the tort was actionable in Illinois, the court stated the parameters of the tort thusly: 

"The comments to this section of the Restatement indicate that the nature of this tort depends upon some type of highly offensive prying into the physical boundaries or affairs of another person. *** [T]he core of this tort is the offensive prying into the private domain of another."   
Lovgren
, 126 Ill. 2d at 416.

The Third District of the Appellate Court recognized the tort of intrusion upon the seclusion of another in 
Melvin v. Burling
, 141 Ill. App. 3d 786, 789 (1986), where the court enunciated four elements that must be pleaded to sustain the cause of action: (1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion must be offensive or objectionable to a reasonable person;  (3) the matter upon which the intrusion occurs must be private; and (4) the intrusion causes anguish and suffering.  The Fifth District recognized a cause of action for intrusion upon the seclusion of another in 
Davis v. Temple
, 284 Ill. App. 3d 983, 994 (1996), where it adopted the four-pronged test set forth in 
Melvin
.  This court recognized the tort in 
Benitez v. KFC National Management Co.
, 305 Ill. App. 3d 1027, 1033-34 (1999).  
In 
Johnson v. K mart Corp.
, 311 Ill. App. 3d 573 (2000), the First District expressly recognized the tort and adopted 
Melvin
's four elements.  
Johnson
, 311 Ill. App. 3d at 578.  The First District most recently refined 
Melvin
's second element, the requirement that the alleged intrusion be offensive or objectionable to a reasonable person, to require that the intrusion be "highly" offensive.  
Schmidt v. Ameritech Illinois
,  329 Ill. App. 3d 1020, 1029 (2002).  Our supreme court in 
Lovgren
, in articulating the position of the Restatement, clearly mandated that "this tort depends upon some type of 
highly
 offensive prying."  (Emphasis added.)  
Lovgren
, 126 Ill. 2d at 416-17.
  The First District has also observed that "[t]he third element of the tort appears to be the predicate for the other three."  
Busse v. Motorola, Inc.
, 351 Ill. App. 3d 67, 72 (2004).  "Private facts must be alleged.  Without private facts, the other three elements of the tort need not be reached."  
Busse
, 351 Ill. App. 3d at 72.  In 
Benitez
, we considered the tort in light of the statute of limitations and had no occasion to adopt 
Melvin
's four elements for stating a cause of action for intrusion upon the seclusion of another.  We do so now 
and conclude that plaintiffs cannot satisfy the third prong of the 
Melvin
 test, that the intrusion is into a private matter, so that we need not discuss whether they satisfy the other elements.  

In 
Benitez
, the plaintiffs were female former
 employees of KFC.  
Benitez
, 305 Ill. App. 3d at 1029.  The crux of the plaintiffs' claim was that the defendants poked holes in the ceiling of the women's restroom and viewed the plaintiffs disrobing and using the restroom facilities.  
Benitez
, 305 Ill. App. 3d at 1033.  We held that it was the voyeuristic aspect of the intrusion that constituted the tort of intrusion upon the seclusion of another, and that without the allegation of voyeurism, we would  have been reluctant to find any invasion of privacy.  
Benitez
, 305 Ill. App. 3d at 1033.  
In 
Acuff v. IBP, Inc.
, 77 F. Supp. 2d 914, 924 (C.D. Ill. 1999), 
IBP, the plaintiffs' employer, established video surveillance of the nurse manager's office in order to catch whoever was stealing from that office.  
Acuff
, 77 F. Supp. 2d at 918.  But the camera, which was placed in the ceiling tiles, also caught nurses performing medical examinations.  
Acuff
, 77 F. Supp. 2d at 918.  The plaintiffs, persons upon whom the examinations were performed, sued, alleging intrusion upon the seclusion of another.  
Acuff
, 77 F. Supp. 2d at 918.  Applying 
Melvin
's four factors, the district court said, "The Court quickly disposes of any argument by IBP that the matter intruded upon was not a private matter (the third element).  There are few things in life that are more private than medical treatments and/or examinations."  
Acuff
, 77 F. Supp. 2d at 924.

 In contrast to 
Benitez
 and 
Acuff
,
 plaintiffs in the instant case have not pleaded that defendants' surveillance camera captured any private activity.   The locations involved in 
Benitez
 and 
Acuff
, a restroom and a medical examination room, were private by their nature.
  Here, the complaint alleged merely that the camera was aimed at plaintiffs' garage, driveway, side-door area, and backyard.  The complaint does not explain why a passerby on the street or a roofer or a tree trimmer could not see what the camera saw, only from a different angle.  We conclude that plaintiffs have not pleaded facts that satisfy the privacy element of the tort of intrusion upon the seclusion of another.  
 Accordingly, the trial court did not err in dismissing count I of the complaint.

PRIVATE NUISANCE 

In addition to the general allegations previously summarized, in count III plaintiffs
 further alleged that the continuous and ongoing telephone calls and complaints to the police, the Association, and other governmental agencies, as well as defendants' ongoing personal surveillance and videotaping of plaintiffs and their property, resulted in a physical invasion into plaintiffs' "residence, property, and lives."  Plaintiffs alleged that they were obliged to respond to telephone calls, personal investigatory visits, and numerous complaints initiated upon the demand of defendants.  All of this, plaintiffs averred, caused them extreme annoyance and discomfort and prevented them from the reasonably unfettered use of their residence and yard.  Plaintiffs claim that these acts of defendants constituted a private nuisance.

At issue in our case is the nature of the invasion, as defined by our supreme court in 
In re Chicago Flood Litigation
, 176 Ill. 2d 179, 204 (1997).
  A private nuisance is a substantial invasion of another's interest in the use and enjoyment of his or her land. 
  The invasion must be:  substantial, either intentional or negligent, and unreasonable.  
Flood Litigation
, 176 Ill. 2d at 204.  The standard for determining if particular conduct constitutes a nuisance is the conduct's effect on a reasonable person.  
Flood Litigation
, 176 Ill. 2d at 204.  A nuisance is an interference with the interest in the private use and enjoyment of the land and does not require interference with possession.  
Flood Litigation
, 176 Ill. 2d at 204.  The interference must consist of an invasion by something perceptible to the senses.  
Flood Litigation
, 176 Ill. 2d at 205.  
In 
Flood Litigation
, Hartford, as subrogee of several insurance claimants, alleged that evacuation from business premises in Chicago's Loop, as a result of the flood of the underground freight tunnel system, was a nuisance for which the claimants should be compensated.  
Flood Litigation
, 176 Ill. 2d at 187.  Hartford did not allege that the flood waters had physically invaded the claimants' properties.  
Flood Litigation
, 176 Ill. 2d at 187.  The trial court dismissed Hartford's nuisance claim as to those claimants who did not suffer a physical invasion of their properties by the flood waters.  
Flood Litigation
, 176 Ill. 2d at 203.  Hartford argued before our supreme court that the evacuation was an unreasonable and substantial invasion of the claimants' properties.  
Flood Litigation
, 176 Ill. 2d at 204.  Our supreme court disagreed and stated, "This court has repeatedly described a nuisance as 'something that is offensive, physically, to the senses and by such offensiveness makes life uncomfortable.' "  
Flood Litigation
, 176 Ill. 2d at 205, quoting 
Rosehill Cemetery Co. v. City of Chicago
, 352 Ill. 11, 30 (1933).  
Flood Litigation
 cited examples of "smoke, fumes, dust, vibration, or noise produced by defendant on his own land and impairing the use and enjoyment of neighboring land" as being actionable invasions.  
Flood Litigation
, 176 Ill. 2d at 206.  Thus, to state a cause of action for private nuisance, among the other elements, it is necessary to allege a physical invasion of the plaintiff's property.  
Flood Litigation
, 176 Ill. 2d at 205.

  At issue in the instant case is whether defendants' alleged actions amounted to a physical invasion of plaintiffs' property.   In order to resolve this question, we examine in detail those acts of defendants that are alleged in this count.  They may be grouped into four categories: (1) the surveillance with the camera; (2) personally staring at plaintiffs from their property line; (3) telephone calls and complaints to the police and other officials; and (4) telephone calls placed to plaintiffs' residence by investigatory agencies, visits to their home by persons investigating complaints initiated by defendants, and the service of documents evidencing defendants' complaints, such as tickets for ordinance violations.  It is category four that plaintiffs alleged constituted a "physical invasion" of their property.

Because the actions in the fourth category are the only ones alleged to be physical invasions, we will examine them to determine whether they are physical invasions that are substantial, either intentional or negligent, and unreasonable.   There is no allegation that the telephone calls regarding investigation of defendants' complaints were incessant or numerous, or placed at unreasonable hours, or that the visits by investigative personnel were unreasonable.  We fail to see how being served with process constitutes an unreasonable invasion of plaintiffs' property in the absence of an allegation that the service was accomplished by illegal, violent, or improper means.  (The record shows that the ordinance violation complaints were served by certified mail.)  

Even if we were prepared to say that some, or all, of this conduct constituted a physical invasion that was substantial, either intentional or negligent, and unreasonable, plaintiffs' suit fails because defendants themselves did not make the telephone calls or come onto plaintiffs' property or serve them with process.   Plaintiffs did not sue the people who actually performed those acts.  Nor did plaintiffs allege that defendants controlled either how the investigations were handled or the actions of the various officials.  Liability for a nuisance will not attach where the harm is caused by a superseding event.  In 
City of Bloomington v. Westinghouse Electric Corp.
, 891 F.2d 611, 614 (7th Cir. 1989), Bloomington sued Westinghouse for both a common-law public nuisance and a private nuisance in releasing PCBs into Bloomington's sewers and into its sewage treatment plant. Bloomington added as a defendant
 Monsanto Company, which sold  to Westinghouse
 the chemical mixtures that produced the PCBs.  
Bloomington
, 891 F. 2d at 612.  In holding that Monsanto had no liability to Bloomington, the Seventh Circuit Court of Appeals stated:

"Since the pleadings do not set forth facts from which it could be concluded that Monsanto retained the right to control the PCBs beyond the point of sale to Westinghouse, we agree with the district court that Monsanto cannot be held liable on a nuisance theory.  

***  Westinghouse was in control of the product purchased and was solely responsible

for the nuisance it created by not safely disposing of the product."  
Bloomington
, 891 F.2d

at 614.

We believe that 
Bloomington
 is correct.  Once defendants made their complaints to the police and the city, they lost control over the outcome of those complaints.  
We will not stretch liability for a private nuisance to the extreme urged by plaintiffs.

Plaintiffs cite a number of foreign jurisdictions in support of their claim that defendants'  actions amount to a private nuisance.  
In 
Macca v. General Telephone Co. of the Northwest, Inc.
, 262 Or. 414, 495 P.2d 1193 (1972), the Oregon Supreme Court held that a telephone company caused an actionable nuisance when, in a yellow pages advertisement, it erroneously listed the telephone number belonging to the plaintiff as the "after hours" telephone number of a floral shop, resulting in numerous telephone calls to the plaintiff at all hours of the evening and night.  
Macca
, 262 Or. at 418, 495 P.2d at 1195.  The court declared, "The gist of the action is the invasion of the individual's interest in the use and enjoyment of land. [Citation.]  It includes the disturbance of the comfort or convenience of the occupant of the land."  
Macca
, 262 Or. at 419, 495 P.2d at 1195.  While we are not prepared to hold that vexatious telephone calls may never constitute a nuisance, we distinguish 
Macca
 by noting that it dealt with an erroneous after-hours telephone listing that resulted in numerous telephone calls to the plaintiff's residence at late hours, which disturbed her meals and sleep, while plaintiffs in our case do not allege conduct that by its very nature is unreasonable.  Plaintiffs' complaint does not set forth with particularity the number of calls received and the times the calls were received.  

In another foreign case cited by plaintiffs, 
Wiggins v. Moskins Credit Clothing Store, Inc.
, 137 F. Supp. 764 (E.D. S. C. 1956), the court ruled in the plaintiff's favor on her complaint that the defendant attempted to collect a debt by means of intrusive and abusive telephone calls to the plaintiff, who was the debtor's landlady.  The court stated, "I think it is clear that the invasion of a proprietary interest of plaintiff in her home is alleged, by conduct tantamount to a nuisance.  *** [I]t is alleged that there were repeated calls *** which amounted to an intrusion into her home and an interference with the peaceful enjoyment thereof."  
Wiggins
, 137 F. Supp. at 767. The allegations in the complaint in 
Wiggins
 were that the telephone calls, which were made in the late hours of the night, were abusive and threatening, using "vile" and "opprobrious" language.  
Wiggins
,  137 F. Supp. at 764.  These calls were made for a period of three months.  
Wiggins
, 137 F. Supp. at 764.  As we stated above, plaintiffs in our case have not alleged sufficient facts that lead us to conclude that the telephone calls placed to their residence as a result of defendants' complaints were abusive, threatening, vile, or opprobrious so as to bring the complaint within the ambit of 
Wiggins
.

In 
Hutcherson v. Alexander
, 264 Cal. App. 2d 126, 70 Cal. Rptr. 366 (1968), the California Court of Appeal found a nuisance in the conduct of the defendant's business 
vis-a-vis
 the plaintiff's business, under the following definition: 

"It is the general rule that the unreasonable, unwarrantable, or unlawful use by a person of his own property so as to interfere with the rights of others is a nuisance. [Citation.] In fact, any unwarranted activity which causes substantial injury to the property of another or obstructs its reasonable use and enjoyment is a nuisance which may be abated.  And, even a lawful use of one's property may constitute a nuisance if it is part of a general scheme to annoy a neighbor and if the main purpose of the use is to prevent the neighbor from reasonable enjoyment of his own property."  
Hutcherson
, 264 Cal. App. 2d at 130, 70 Cal. Rptr. at 369. 

Hutcherson
 involved two competing businesses.  
Hutcherson
, 264 Cal. App. 2d at 129, 70 Cal. Rptr. at 368.  On his own property, 
the  defendant maliciously erected a 15-foot fence that was designed to obscure the plaintiff's business, a drive-in, so that motorists would not see it when passing by on the adjacent highway.  
Hutcherson
, 264 Cal. App. 2d at 130-31, 70 Cal. Rptr. at 369-70
.  The appellate court held that erecting this fence, along with many other activities, was done to annoy the plaintiff and was part of a general scheme to interfere with the plaintiff's reasonable use and enjoyment of his property.  
Hutcherson
, 264 Cal. App. 2d at 131, 70 Cal. Rptr. at 370.  However, even if it were defendants' plan to generally annoy plaintiffs in our case, the 
Flood Litigation
 case requires a physical invasion, which 
Hutcherson
 did not.                           

Plaintiffs additionally cite 
Blevins v. Sorrell
, 68 Ohio App. 3d 665, 589 N.E.2d 438 (1990).  In that case, the Court of Appeals of Ohio declared "a surveillance scheme which apparently knew no bounds" to be a nuisance.  
Blevins
, 68 Ohio App. 3d at 668, 589 N.E.2d at 439.  The court did not set forth its standard for finding that a nuisance existed, but the facts showed that the defendants conducted surveillance of the plaintiffs' property by photographing it from a platform ladder in a tree and looking at it through a telescope.  
Blevins
, 68 Ohio App. 3d at 668, 589 N.E.2d at 439-40.  The Ohio court did not require or discuss the element of physical invasion.  

Another California case cited by plaintiffs is 
Griffin v. Northridge
, 67 Cal. App. 2d 69, 153 P.2d 800 (1944), a neighbor feud of epic proportions, where the court said, "That the acts of defendants created a nuisance is established by the proof that the acts committed were of such a nature as to harass and annoy plaintiffs continuously and to interfere with their comfortable enjoyment of life and of their home."  
Griffin
, 67  Cal. App. 2d at 75, 153 P.2d at 803.  While the holding in 
Griffin
 did not hinge on a physical invasion, the facts illustrate conditions that would constitute such an invasion for purposes of 
Flood Litigation
, conditions that are not present in our case.  Among other acts, the defendants in 
Griffin
 destroyed flower beds on the plaintiffs' property, placed a garbage can beneath the plaintiffs' dining room window, suspended tin can tops along the property line so that they clanged day and night, spattered paint on the plaintiffs' walls and windows, planted eucalyptus trees that obstructed the plaintiffs' view and sent their roots beneath the soil onto the plaintiffs' property, endangering their foundation, and erected a hideous board fence that blocked ventilation and sunlight from the Griffin home, causing the plaintiffs' plants to die.  
Griffin
, 67 Cal. App. 2d at 71-72, 153 P.2d at 801.  The physical invasions in 
Griffin
 went far beyond the telephone calls, personal visits, and receipt of documents plaintiffs alleged in our case and, therefore, 
Griffin
 does not provide support for plaintiffs' position.

We note that the cases cited by plaintiffs do not deal with the intervening cause that exists in our case.  At first blush, 
Macca
 seems like an intervening cause case because the telephone calls were placed by someone other than the defendant.  However, the defendant telephone company acted directly against Macca by incorrectly listing her telephone number as the florist's "after hours" telephone number.  In our case, agency representatives who exercised independent judgment were the direct actors.  
Bloomington
 requires that control of the direct actor is necessary to find a defendant, who is not the direct actor, liable for a nuisance.  At oral argument, plaintiffs admitted that the State's Attorney, the city prosecutor, and the police were not defendants' agents.  The complaint did not allege that defendants controlled the actions of those persons.  Plaintiffs did allege that defendant Stanley is on the Association board, but did not allege that he controlled the board or its investigations into plaintiffs' activities.      

    Plaintiffs ask us to apply the definition of "nuisance" found in Black's Law Dictionary: "Nuisance is that activity which arises from unreasonable, unwarranted or unlawful use by a person of his own property, working obstruction or injury to right of another *** and producing such material annoyance, inconvenience and discomfort that law will presume resulting damage."  
Black's Law Dictionary 1065 (6th ed. 1990).
 This we cannot do, consistent with the holding in 
Flood Litigation
 that a private nuisance requires a physical invasion.  Accordingly, the trial court did not err in dismissing count III of the second amended complaint. 

                                                         INJUNCTIVE RELIEF

Plaintiffs requested that defendants be permanently enjoined from filming their property.  They premise their right to injunctive relief on the merits of their underlying causes of action for intrusion upon the seclusion of another and nuisance.  As we have determined that plaintiffs cannot sustain those causes of action, we hold that they are not entitled to an injunction.   

                            INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS 

Plaintiffs contend that they stated a cause of action for intentional infliction of emotional distress.  In addition to the general allegations summarized earlier, plaintiffs alleged that defendants held a position of power over them by maintaining a seat on the Association's board of directors, thereby having "actual or apparent authority over the Schillers and their property."  The complaint did not identify those acts of defendants that are said to be extreme and outrageous.  The complaint  alleged "ongoing and harassing conduct," but did not allege that the ongoing and harassing conduct was extreme and outrageous.  Plaintiffs maintained at oral argument 
that the bases for bringing this cause of action were the video surveillance, complaints to the police and the Association resulting in investigations and prosecutions of them,  and defendant Stanley's presence on the Association board.  Plaintiffs alleged that as a result of defendants' conduct, they suffered a variety of severe emotional and physical ailments.  To 
establish a claim for intentional infliction of emotional distress, a plaintiff must show (1) that the conduct was truly extreme and outrageous, (2) that the actor intended that his conduct inflict severe distress or knew that there was a high probability that his conduct would inflict such distress, and (3) that the conduct in fact caused severe emotional distress.  
Pavlik v. Kornhaber
, 326 Ill. App. 3d 731, 743-44 (2001).  Liability arises only where the conduct complained of was " ' "atrocious, and utterly intolerable in a civilized community." ' " 
Pavlik
, 326 Ill. App. 3d at 744, quoting 
Pavilon v. Kaferly
, 204 Ill. App. 3d 235, 245 (1990), quoting Restatement (Second) of Torts §46, Comment 
d
, at 73 (1965).
  We hold that plaintiffs have not pleaded facts sufficient to establish the first element of the tort, that is, extreme and outrageous conduct.  

Our supreme court recognized the tort of intentional infliction of emotional distress in 
Knierim v. Izzo
, 22 Ill. 2d 73, 87 (1961).  In doing so, the court described actionable conduct as follows: "[A] line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility."  
Knierim
, 22 Ill. 2d at 85.  The conduct under scrutiny in 
Knierim
 was the defendant's threat to murder the plaintiff's husband and the fulfillment of the threat.  
Knierim
, 22 Ill. 2d at 83.

   
 The pattern of surveillance that plaintiffs alleged consisted of a video camera continuously photographing a portion of the exterior of their house and defendants staring at plaintiffs.  The trial court made the finding that the camera also photographed the interior of plaintiffs' garage when the garage door was open.  As we pointed out above, plaintiffs did not allege that defendants' surveillance was voyeuristic or that it even extended into the privacy of their home, except for the interior of the garage when plaintiffs left the door open.  We imagine that it would be annoying to be stared at and to have a video camera continuously panning for silly infractions; but this does not amount to the atrocious and utterly intolerable behavior required by 
Pavlik
.

Plaintiffs rely on 
Gianoli v. Pfleiderer
, 209 Wis. 2d 509, 563 N.W.2d 562 (1997), where the Court of Appeals of Wisconsin upheld a damages award against the defendants, who proved to be obnoxious neighbors.  The defendant John Pfleiderer engaged in near constant surveillance of the plaintiffs as well as stalked and followed them without justification.  
Gianoli
, 209 Wis. 2d at 524, 563 N.W.2d at 567.  The opinion does not spell out the manner of the surveillance.  In 
Gianoli
, the defendants also interfered with the plaintiffs' attempts to refinance their home, by sending unflattering materials to lenders and others.  
Gianoli
, 209 Wis. 2d at 520, 563 N.W.2d at 565.  Our case contains  no allegations of following or stalking or interference in personal business relationships and as such is distinguishable.     

Plaintiffs contend that defendants' complaints to the police and the Association resulted in investigations and prosecutions of them.  We first look to whether the conduct of the police, prosecuting authorities, or the Association could be characterized as extreme and outrageous.  Plaintiffs mention the police investigations in paragraphs 17 and 25 of the complaint.  They allege that the police have "investigated, questioned and suspected" them, and that the police conducted "interrogations" and "inspections."  Plaintiffs do not tell us what was extreme and outrageous in what the police did.  There is nothing inherently extreme and outrageous about conducting investigations or inspecting or questioning or suspecting.  Plaintiffs also did not allege that defendants controlled the actions of the police.  Without an allegation of control, we are left to draw the conclusion that the police themselves independently decided whether or not to investigate.  Indeed, plaintiffs alleged that there were instances when the police refused to do anything in response to defendants' complaints.

We next address the prosecutions.  The exhibits to the complaint show that the city issued 15 complaints to plaintiffs for various violations of the city code.  Each of these complaints was signed by either a bureaucratic representative of the city or a Highland Park police officer, and each complaint contained the language, "The code officer states that he or she has just and reasonable grounds to believe and does believe that the defendant committed the violation stated above."  On one of the complaints for barking dogs, the patrol officer's notation, "Officer heard barking dogs," appeared.  Each of the complaints was served on plaintiffs by certified mail.  The record also shows that a Lake County assistant State's Attorney signed the information in case No. 01--CM--8660, which charged plaintiff Ronald Schiller with disorderly conduct in shining a light at defendants' security camera.  At the bottom of the information is typed: "Ex parte hearing held and probable cause found.  Warrant issued--bond set in the amount of: $20,000.00."  The warrant issued in case No. 03--CM--2183, which charged Ronald Schiller with forcefully exhaling into defendant Stanley's face, was signed by a Lake County judge.  We conclude that, even if defendants were motivated by malice in making the complaints to the authorities, the ultimate decisions to charge plaintiffs rested in other, disinterested hands.  See 
Adams v. Sussman & Hertzberg, Ltd.
, 292 Ill. App. 3d 30, 40 (1997) ("the furtherance and prosecution of the criminal action was in the control of the State's Attorney").  

The State's Attorney has always enjoyed a wide discretion in both the initiation and the management of criminal litigation.  
People v. Nash
, 183 Ill. App. 3d 924, 930 (1989).  That discretion includes the decision whether to initiate any prosecution at all, as well as to choose which of several charges shall be brought.  
Nash
, 183 Ill. App. 3d at 930.  The State's Attorney, as the representative of the people, is vested with discretion to evaluate evidence and other pertinent factors in determining which offenses properly can
 and should
 be charged.  
Nash
, 183 Ill. App. 3d at 930.  We believe that the city prosecutor enjoys a similarly broad discretion.  There is no allegation that the code officers, the Highland Park police, the city prosecutor, and the Lake County State's Attorney acted on defendants' complaints with anything other than reasonable grounds or probable cause.  We note that plaintiffs were found liable on several of the ordinance violation charges and one was continued "for compliance."  Plaintiffs admitted at oral argument that the complaints defendants lodged against them were not baseless, just frivolous.  Moreover, plaintiffs did not allege that the police or the prosecutors did anything wrong.

As to the conduct of the Association, plaintiffs do not describe what the Association's disruptive investigations were or what actions the Association took in response to the investigations.  As in the case of the complaints to the police, plaintiffs did not allege that the Association did anything wrong in conducting its investigations or that the complaints were false or baseless.  At oral argument, plaintiffs lumped the complaints to the Association with the complaints to the police in saying those complaints were not baseless or false.  Plaintiffs alleged that defendant Stanley was on the board, but they did not allege that he controlled the decisions of the board with respect to investigating complaints against plaintiffs.

Having determined that neither the investigations nor the prosecutions of plaintiffs constituted extreme and outrageous conduct, we address the allegations concerning the complaints defendants made to the authorities.  We do not believe that the body of law supports plaintiffs' contention that making reports to the police and other officials constitutes extreme and outrageous conduct.  A person will not be liable where he has done nothing more than demand legal rights in a permissible way.  
Knysak v. Shelter Life Insurance Co.
, 273 Ill. App. 3d 360, 370 (1995).  

In 
Layne v. Builders Plumbing Supply Co.
, 210 Ill. App. 3d 966, 973 (1991),
 this court held that a statement to the police, which was alleged to be false, that the plaintiff harassed, assaulted, and verbally threatened a coworker did not rise to the level of extreme and outrageous conduct required to be actionable.  We said in that case:

"While it is not unlikely that defendant's alleged conduct created some distress and embarrassment for plaintiff and may have subjected plaintiff to some indignities, we do not believe the conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency' ***."  
Layne
, 210 Ill. App. 3d at 973, quoting 
Public
 
Finance Corp. v. Davis
, 66 Ill. 2d 85, 90 (1976).

See also 
Balark v. Ethicon, Inc.
, 575 F. Supp. 1227, 1231 (N.D. Ill. 1983) (supplying the plaintiff's name to the FBI as a suspect in the Tylenol murders did not constitute extreme and outrageous conduct); 
Adams
, 292 Ill. App. 3d at 39 
(a false complaint to the police of criminal trespass to vehicle that resulted in the plaintiff's arrest was not extreme and outrageous conduct). 
  

Similarly, no extreme and outrageous conduct was found in 
Khan v. American Airlines
, 266 Ill. App. 3d 726 (1994)
.  American delivered to the plaintiff what it knew to be a stolen ticket, with the intent to entrap him and without facts to indicate that the plaintiff knew the ticket was stolen.  
Khan
, 266 Ill. App. 3d at 727.  After making the delivery, airline security arrested the plaintiff and had the Chicago police take him into custody.  
Khan
, 266 Ill. App. 3d at 727-28.  Without any factual basis to believe that the plaintiff committed a crime, the airline's security agents nonetheless signed a misdemeanor complaint for theft.  
Khan
, 266 Ill. App. 3d at 728.  The plaintiff alleged that the defendant knew he was particularly sensitive because he was on his way to his father's funeral.  
Khan
, 266 Ill. App. 3d at 733.  In upholding the trial court's dismissal of the plaintiff's complaint, the appellate court said, "We do not believe that the alleged acts of the defendant could be considered conduct that goes beyond all possible bounds of decency."  
Khan
, 266 Ill. App. 3d at 733.        

  We are mindful that in the cases cited above
, only one complaint to the police occurred, while in our case plaintiffs have documented as part of their complaint more than a dozen.  Nevertheless, we do not see this distinction as a qualitative one requiring a different result.  Moreover, the complaints made to the police in 
Layne
, 
Adams
, and 
Khan
 were false and not actionable.  In our case, plaintiffs admitted at oral argument that defendants did not fabricate the substance of their complaints.

Plaintiffs also alleged that when the police refused to act on defendants' complaints, defendants then made reports to the Association.  Plaintiffs contend that these reports resulted in numerous disruptive investigations.  We perceive a difference in the gravity of the conduct in making complaints to the police as opposed to the Association.  The police may do drastic things to persons that a homeowners' association cannot do, such as deprive them of their liberty.  As with the complaints made to the police, plaintiffs did not allege that the complaints to the Association were false.  It does not appear to us that true complaints to the Association of trifling breaches of its covenants can meet the 
Pavlik
 standard for extreme and outrageous conduct.     

Defendants were exercising their legal rights as citizens and members of the Association in making the complaints to the authorities and to the Association.  Although their surveillance and their complaints to the police and the Association resulting in investigations and prosecutions would have been irksome, we conclude that these actions did not rise to the level of extreme and outrageous conduct required to sustain the tort of intentional infliction of emotional distress.

Plaintiffs contend that defendant Robert Stanley's position as a member of the board of the Association, coupled with the surveillance and the prosecutions and investigations, elevates defendants' conduct to the level of extreme and outrageous.  This contention is rooted in language found in 
McGrath v. Fahey
, 126 Ill. 2d 78, 86-87 (1989), where our supreme court stated:

"It is clear *** that the degree of power or authority which a defendant has over a plaintiff can impact upon whether that defendant's conduct is outrageous.  The more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment."

McGrath
 furnishes examples of positions that might give rise to a finding that conduct that is otherwise not outrageous will be considered so: police officers, school authorities, landlords, creditors, insurance companies, and employers.  
McGrath
, 126 Ill. 2d at 87-88.  Our supreme court observed, "Illinois cases in which intentional infliction of emotional distress has been sufficiently alleged have in fact very frequently involved a defendant who stood in a position of power or authority relative to the plaintiff."  
McGrath
, 126 Ill. 2d at 87.  It is not inconceivable to us that a homeowners' association board could act oppressively, even outrageously, by virtue of its power.  However, plaintiffs' mere allegation that defendant Stanley is on the board is insufficient to tie his position to the conduct alleged.  Consequently, we do not believe that the 
McGrath
 rule applies.

Even considering the cumulative effect of defendants' conduct, we do not find that it is actionable.  An example of a cumulative pattern of conduct that was extreme and outrageous is found in 
Pavilon v. Kaferly
, 204 Ill. App. 3d 235, 239-241 (1990).  In 
Pavilon
, the counterplaintiff and the counterdefendant dated for a period of time.  
Pavilon
, 204 Ill. App. 3d at 239.  After their dating relationship ceased, the counterplaintiff went to work for the counterdefendant, who pressured her to attend family and social events with him, promising that things would be easier on her at work if she went.  
Pavilon
, 204 Ill. App. 3d at 240.  Thereafter, the counterdefendant offered her money for sex on 8 to 10 occasions over a period of months.  
Pavilon
, 204 Ill. App. 3d at 240.  She refused, and the counterdefendant fired her.  
Pavilon
, 204 Ill. App. 3d at 241.  At a meeting after the firing occurred, the counterdefendant told her that on the day he fired her he wanted to rape her and that he still wanted to rape her.  
Pavilon
, 204 Ill. App. 3d at 241.  After this meeting, the counterdefendant did numerous acts harassing her new employer, her parents, and her psychotherapist, and he spread false information about her and her new employer.  
Pavilon
, 204 Ill. App. 3d at 241.  At different times, the counterdefendant threatened to kill the counterplaintiff, rape her, and file a lawsuit to take custody of her son away from her.  
Pavilon
, 204 Ill. App. 3d at 241.  The appellate court stated, "Cumulatively, this [evidence] concerning Pavilon's conduct towards Kaferly *** could support a finding that it was outrageous enough to satisfy the Restatement standard " in section 46, comment 
d
.  
Pavilon
, 204 Ill. App. 3d at 246.  

Defendants' conduct in the instant case looks innocent when measured against the 
Pavilon
 standard.  Accordingly, we hold that the trial court did not err in dismissing count IV of the second amended complaint. 

                                                DISMISSAL WITH PREJUDICE 

Plaintiffs' final contention is that the trial court erred in dismissing the complaint with prejudice.  Plaintiffs point out that no discovery was taken prior to the dismissal.  They assert that  discovery will allow them to "flesh out" their allegations.  A trial court should dismiss a complaint with prejudice under section 2--615 of the Code only if it is clearly apparent that the plaintiffs can prove no set of facts that would entitle them to recover.  
In re Application of the County Collector of Lake County
, 343 Ill. App. 3d 363, 370 (2003).  The decision to deny leave to amend is within the sound discretion of the trial court.  
County Collector
, 343 Ill. App. 3d at 370.  Generally, the trial court should give a plaintiff at least one opportunity to cure the defects in his or her complaint.  
County Collector
, 343 Ill. App. 3d at 370.  Here, the trial court gave plaintiffs three chances to plead a viable cause of action against defendants, which we consider ample opportunity.  Accordingly, we cannot say that the trial court abused its discretion in dismissing the second amended complaint with prejudice.  

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

O'MALLEY, P.J., and GILLERAN JOHNSON, J., concur.