Brown, J.
 

 In 1955 Mrs. Podoll’s right ankle had been burned in an accident in Chicago and a phlebitis resulted. This required her to be hospitalized for two months with aftertreatment of eight months. After getting home from Chicago, she was under the surveillance of a Dr. O’Brien and was still under his observation, though no longer being treated for the phlebitis, when she was bitten by the monkey. Mrs. Podoll was bitten August 4, 1956. Pier testimony is uncontroverted that in the weeks and months following the accident her finger and left hand were swelled and painful and that she sought medical treatment to relieve the condition. Between August 4, 1956, and the death of her attend
 
 *585
 
 ing physician, Dr. O’Brien in October, 1956, O’Brien surgically opened the swelling six times for drainage with consequent aftertreatment. After Dr. O’Brien died, Mrs. Podoll’s hand was treated by a Dr. Konz for a few weeks and by a Dr. Dennis, an osteopath, and later by a Dr. Marshall who performed surgery aided by a number of other medical and technical people.
 

 The record shows that there was a flare-up of phlebitis in Mrs. Podoll’s right leg while Dr. O’Brien, Dr. Konz, and Dr. Marshall were treating her for the bite. In September, 1958, while Mrs. Podoll was in the Appleton Memorial Hospital after surgery on her hand by Dr. Marshall, her leg became painful and inflamed and her leg was put in elevation.
 

 Dr. Marshall testified that from August 28, 1958, to the date of the trial in October, 1959, he “went into the wound” six times plus two additional grafts at the thigh and at the abdomen which was painful to Mrs. Podoll and which will leave scars. Most of that time she has been under treatment in the hospital and the rest of the time convalescent and has not been doing any appreciable work, with a reasonable medical certainty of ten months to a year inability before she can resume her duties running the Melody Bar.
 

 It was severe pain and the inability to use her hand which induced her to call the various doctors. The repeated surgeries were admitted by the medical experts to be painful, though anesthetics were used. The prolonged disability, not only interfering with her business, but also preventing her from doing her housework and caring for her personal needs during much of the time, cannot be ignored. The surgeries were carried out upon the advice of a doctor whose qualifications were admitted by the defendant. Nothing in the record lends substance to any imputation that Mrs. Podoll has been a malingerer. We must conclude that the allowance of $650 for personal injury is woefully inadequate.
 

 
 *586
 
 The medical bills are next in controversy. The bills received in evidence for past medical and hospital services to Mrs. Podoll are:
 

 Appleton Memorial Hospital........ $3,306.09
 

 Dr. Paul T. O’Brien.............. 233.00
 

 Dr. Stephan A. Konz............. 37.00
 

 Dr. George A. Nichols............ 40.00
 

 Dr. K. J. Siegrist................ 270.00
 

 Dr. William A. Dafoe............. 215.00
 

 Dr. F. S. Marshall................ 2,150.00
 

 Appleton Medical Laboratory....... 17.00
 

 Drugs.......................... 187.75
 

 Physical Therapy Center........... 400.50
 

 Total............ $6,856.34
 

 Respondent challenges the bill of Dr. O’Brien as submitted by the doctor’s office after his death because, in addition to services rendered for a monkey bite, Dr. O’Brien may have been charging for a phlebitis treatment. The bill begins with a house call at night on August 4, 1956, and it shows a dressing and shot of penicillin and tetanus toxoid. Next come itemized calls almost daily to administer antibiotic shots on 13 occasions. Thereafter the doctor made 26 calls, at first daily and later at longer intervals to dress the wound. Two house calls for unidentified services then appear, totaling $10. Then there are 14 calls for further dressings. Each call except the two unidentified house calls shows on its face connection with the treatment of a wound, not of a phlebitis. Moreover, there is Mrs. Podoll’s testimony that the doctor did not treat the phlebitis after she was bitten by the monkey. There is testimony in the record that the bite of a monkey is extremely dangerous. No witness said that the close watch kept by Dr. O’Brien over the patient was not consistent with good medical practice.
 

 There is testimony that Mrs. Podoll received some treatment for the phlebitis after she was bitten by the monkey, and
 
 *587
 
 doctors’ and hospital services were rendered in treatment of the phlebitis at the same time when she was being treated for the injury to her hand. Her doctors disagreed as to whether there was any causal connection between the hand injury and the recurrence of phlebitis. Therefore, the jury could find that there was none. That being so, it is necessary to find what part of the medical expense of $6,856.34 can be apportioned to the monkey. The jury allowed $4,500 and respondent is content with that. Appellants are not, but no one supplies us with any evidence or with any argument providing a basis for this particular discount of these definite charges. We do not know and we have not been able to find out what items the jury threw out or reduced in making up the difference of $2,356.34. We must conclude, then, that this finding is unsupported by the evidence.
 

 We consider that justice has not been done because the award of damages for personal injury is grossly inadequate and the partial disallowance of the doctors’ and hospital bills is unsupported by the evidence. The items of future medical expense and the past and future loss of income are not as capable of exact appraisal as are the past medical expenses and, by themselves, would not call for a retrial of those issues. But since a new trial must be had on the issues of personal injury and past medical expense we consider it advisable to submit all the damage items to one and the same jury. Our discretionary power of reversal under sec. 251.09, Stats., enables us to do so and we so order.
 

 By the Court.
 
 — Judgment on the liability issue affirmed. Judgment on the damage issues reversed, and cause remanded for a new trial on the issues of damage.