ALSTEEN, Appellant, v. GEHL and another, Respondents.

*September 30—November 1, 1963.*

354

For the appellant there was a brief and oral argument by *Edward P. Rudolph* of Milwaukee.

For the respondents there was a brief by *Miles Laubenheimer* of Menomonee Falls, attorney, and *Charlton, Yanisch, Binzak & Ritchay* of Milwaukee of counsel, and oral argument by *Earl A. Charlton*.

WILKIE, J. Three issues are raised on this appeal:

1. Can a homeowner who enters into a contract with a contractor for home re-siding and other home improvements, recover damages for severe psychological harm alone, if the contractor's conduct in performance of the agreement and in interpersonal contacts with the homeowner is deemed extreme and outrageous and if such extreme and outrageous conduct can be shown to have been undertaken by the con-

tractor for the purpose of inflicting psychological harm on the homeowner?

2. On the facts of this case, was the contractor's conduct in performance of his agreement, and in his interpersonal contacts with the homeowner, extreme and outrageous?

3. Does such a contractor, performing a job pursuant to such an agreement, owe his customer a duty to conduct himself, both in the manner of performance of the work and in his interpersonal contacts with the customer, in a fashion which does not create an unreasonable risk of emotional harm?

Addressing ourselves to the first issue, this court has never expressly considered the question as to whether a person who intentionally inflicts severe emotional harm upon another by means of extreme or outrageous conduct ought to be held liable in tort for such behavior.

We have held that a person may be required to compensate another for emotional stress which attends physical harm which he intentionally or negligently inflicted upon the injured party.[1]

We have also permitted recovery for severe emotional harm, if such psychological disturbance is a response to an intentional invasion of an independent legally protected interest. For example, one who has been libeled may recover damages for the emotional stress attending destruction of a good reputation.[2]

We now conclude that a person may recover damages for severe emotional stress alone, if such psychological condition is the result of the extreme and outrageous conduct of an-

---

[1] Pain and suffering is a compensable item of damage when related to a physical injury. *Podoll v. Smith* (1960), 11 Wis. (2d) 583, 106 N. W. (2d) 332; *DeLong v. Sagstetter* (1962), 16 Wis. (2d) 390, 114 N. W. (2d) 788.

[2] *Martin v. Outboard Marine Corp.* (1962), 15 Wis. (2d) 452, 113 N. W. (2d) 135.

other and if such course of conduct was undertaken by the defendant for the purpose of inflicting psychological harm upon the injured person.

Recovery for emotional stress produced by intentional extreme and outrageous behavior has been recognized in other jurisdictions.[3]

The Restatement of Torts[4] expresses the standard of liability for intentional infliction of emotional harm in these terms:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from it."

In the view of the reporter, the Restatement reflects decided case law.

We cannot accept in full the Restatement statement of the rule. That rule incorporates two theories of liability into one doctrinal formulation. The term "intentional" implies that the defendant's course of conduct was undertaken for the purpose of imposing psychological harm upon the plaintiff. The term "recklessly" however, carries the entirely different

---

[3] *Samms v. Eccles* (1961), 11 Utah (2d) 289, 358 Pac. (2d) 344, recovery allowed for persistent overtures for sexual intercourse resulting in severe emotional distress. *State Rubbish Collectors v. Siliznoff* (1952), 38 Cal. (2d) 330, 240 Pac. (2d) 282, threats of physical harm viewed as intentional infliction of emotional stress for which recovery was permitted. *Duty v. General Finance Co.* (1954), 154 Tex. 16, 273 S. W. (2d) 64, harassing and intimidating tactics of a collection agency held to have been an intentional infliction of emotional distress. Compensation allowed. *Curnutt v. Wolf* (1953), 244 Iowa 683, 57 N. W. (2d) 915, a threat to give an unfavorable job recommendation unless the plaintiff dropped a pending lawsuit, held to state a cause of action. *Nickerson v. Hodges* (1920), 146 La. 735, 84 So. 37, a gross practical joke designed to lead a simpleminded woman to believe that she had discovered a pot of gold, held to be a cause of action.

[4] (2d), Tentative Draft No. 1, 1957, p. 22, sec. 46.

connotation of gross negligence, so that a defendant who is not purposely attempting to impose psychological harm may still be held liable. In *Bielski v. Schulze* [5] we abandoned the concept of gross negligence as a basis of liability in this jurisdiction. Therefore, our statement of the standard for liability is as follows:

*One who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from it.*

In recognizing this cause of action, we give legal support to the basic value commitment of our society and our legal system—respect for human personality. If one person treats another as an object to be deliberately manipulated, humiliated, and scorned, he ought to be compelled to compensate that person for any disabling emotional response caused by his conduct. By holding the bullying party liable, we simultaneously affirm the injured party's value as a person, and express our moral disapproval of a person who treats others as mere things to be manipulated for his own ends.

In the past, this court has been hesitant to compensate emotional harm in the absence of attendant physical injury. The rationale for this result focuses upon the difficulties surrounding proof of subjective psychological experience.

"In discussing the reluctance of courts to extend any doctrine of recovery for mental distress alone to a situation where the defendant is charged with ordinary negligence, it is said in 64 A. L. R. (2d), Emotional Disturbances, p. 113, sec. 6:

" 'The contention that because of the nature of the evidentiary problems involved, the judicial process is not well adapted to distinguishing valid from fraudulent claims in this area, has been recognized as probably the most sub-

[5] (1962), 16 Wis. (2d) 1, 114 N. W. (2d) 105.

stantial of the reasons advanced for denying recovery for mental distress or its physical consequences.' " [6]

The factual basis for the rule of no recovery for emotional distress alone has been considerably altered. While it may be true that at the time the rule of no recovery was formulated, we lacked techniques for gathering reliable information about psychological experience, we now possess the tools whereby we can intelligently evaluate claims of emotional injury. Psychiatry and clinical psychology, while not exact sciences, can provide sufficiently reliable information relating to the extent of psychological stress, and to the causal relationship between the injury and the defendant's conduct, to enable a trier of fact to make intelligent evaluative judgments on a plaintiff's claim.[7] There is no reason to retain a long-standing legal rule when the factual assumptions underlying the norm are no longer supportable.

The statement of the standard for liability needs some elaboration. Four factors must be established for an injured plaintiff to recover:

(1) The plaintiff must show that the defendant's conduct was intentional; that is to say, the defendant behaved as he did for the purpose of causing emotional distress for the plaintiff.

(2) In addition to being intentional, the defendant's conduct must be extreme and outrageous. The average member of the community must regard the defendant's conduct in relation to the plaintiff, as being a complete denial of the

---

[6] *Bogust v. Iverson* (1960), 10 Wis. (2d) 129, 140, 102 N. W. (2d) 228. See also *Gatzow v. Buening* (1900), 106 Wis. 1, 20, 81 N. W. 1003, 1009: ". . . mental distress alone is too remote and difficult of measurement to be the subject of an assessment of damages."

[7] Proceedings of the Institute on Law and the Mind, Psychiatry and Psychology in the Trial Court. University of Wisconsin Extension Law Department, May, 1961.

plaintiff's dignity as a person. The requirement that the conduct be extreme and outrageous reflects our concern with the difficulties surrounding proof of the existence of severe emotional harm, and proof of a causal relationship between the injury and the defendant's conduct. If the conduct is gross and extreme it is more probable that the plaintiff did, in fact, suffer the emotional distress alleged. Moreover, the requirement of extreme and outrageous conduct as a condition of recovery will avoid litigation "in the field of bad manners, where relatively minor annoyances had better be dealt with by instruments of social control other than the law." [8]

(3) The plaintiff must demonstrate that the defendant's conduct was a cause-in-fact of his injury. The mere fact that a person may have had some pre-existing susceptibility to emotional distress does not necessarily preclude liability. A person who bullies another who is emotionally vulnerable shall be deemed liable for intensifying a pre-existing condition of psychological stress. However, a defendant will have the opportunity to demonstrate that the plaintiff's disabling emotional condition would have been present even in the absence of the defendant's intervening conduct. If the defendant should successfully make this demonstration, he would establish that this conduct was not a cause-in-fact of the injury, hence there would be no liability.

(4) The plaintiff must demonstrate that he suffered an extreme disabling emotional response to the defendant's conduct. The severity of the injury is not only relevant to the *amount* of recovery, but is a necessary element to *any* recovery. The plaintiff must demonstrate that he was unable to function in his other relationships because of the emotional

---

[8] Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harvard Law Review (1936), 1033, 1035.

distress caused by defendant's conduct. Temporary discomfort cannot be the basis of recovery.

Therefore, in the instant case, if Mrs. Alsteen could establish (1) that her depressive reaction, a disabling emotional disturbance, was caused by Gehl's conduct, (2) that he behaved as he did for the purpose of causing her emotional harm, and (3) that his conduct could be deemed outrageous and extreme by the average member of the community, she would be entitled to recovery.

On the facts of this case, was the contractor's conduct in performance of his agreement, and in his interpersonal contacts with the homeowner, extreme and outrageous?

In directing a verdict for the defendant, the trial court ruled:

"The conduct of Gehl in this case which was characterized by the jury as unreasonable is not of such a flagrant character to be the basis of recovery. The court is unable to find any decision in which unreasonable conduct has been the basis for recovery."

We agree with the trial court. Gehl's conduct, though unreasonable, was not extreme or outrageous and thus cannot form the basis for a recovery under the cause of action outlined above.

Does such a contractor, performing a job pursuant to such an agreement, owe his customer a duty to conduct himself both in the manner of performance of the work and in his interpersonal contacts with the customer, in a fashion which does not create an unreasonable risk of emotional harm?

This court has recognized that the breach of a contractual duty may give rise to a cause of action predicated upon negligence.[9] Granting that Mrs. Alsteen and Gehl had a

---

[9] *Colton v. Foulkes* (1951), 259 Wis. 142, 47 N. W. (2d) 901; *Presser v. Siesel Construction Co.* (1963), 19 Wis. (2d) 54, 119

contractual relationship, how are we to define Gehl's duty of reasonable care to Mrs. Alsteen? It is well established that harm must be reasonably foreseen as probable by a person of ordinary prudence under the circumstances, if conduct resulting in such harm is to constitute negligence.[10] Are we to conclude that each person has a duty to use reasonable care to avoid creating unreasonable risks of emotional harm in relation to all persons with whom he may come into contact? It would be ironical to adopt this standard in the name of concern for people afflicted with emotional distress. We must recognize that all of us are subjected to various degrees of emotional pressure and that despite our best intentions we often quite carelessly treat others in a manner likely to cause them emotional stress. If such conduct, itself a product of emotional stress, were to be a basis of a lawsuit, each of us would be reinforcing the aggression and hostility we already possess and our society would be more abrasive than it already is. We must conclude that the desirable goal of avoiding careless disregard for the feelings of others must be accomplished by some other means than a lawsuit. Freedom to ventilate our feelings on occasion without fear of liability is necessary if we are to maintain optimum emotional health.

More specifically, and considering the factual situation here, does a person performing a personal-service contract, such as Mr. Gehl, have the obligation to carry out such an agreement in a manner which does not create unreasonable risk of emotional harm? A person performing a personal-

---

N. W. (2d) 405; *Peterson v. Sinclair Refining Co.* (1963), 20 Wis. (2d) 576, 123 N. W. (2d) 479.

[10] *Szep v. Robinson* (1963), 20 Wis. (2d) 284, 291, 121 N. W. (2d) 753; *Radloff v. National Food Stores, Inc.* (1963), 20 Wis. (2d) 224, 232, 121 N. W. (2d) 865; *Wisconsin Power & Light Co. v. Columbia County* (1962), 18 Wis. (2d) 39, 43, 117 N. W. (2d) 597.

service contract carries with him his own feelings of hostility and his own set of emotional pressures. In our opinion, Mr. Gehl did not have a duty to Mrs. Alsteen to conduct himself in a manner unlikely to create unreasonable risk of emotional harm.

*By the Court.*—Judgment affirmed.