MUHICH, Plaintiff-Appellant, v. FAMILY FINANCE CORPORATION, Defendant-Respondent.

*No. 679 (1974). Argued March 4, 1976.—Decided May 14, 1976.*
(Also reported in 241 N. W. 2d 619.)

For the appellant there was a brief and oral argument by *S. A. Schapiro* of Milwaukee.

For the respondent there was a brief by *Colman & Goldstein*, attorneys, and *deVries, Vlasak & Schallert, S. C.* of counsel, and oral argument by *Roger H. Weede*, all of Milwaukee.

DAY, J. The judgment appealed from results from nonsuit of a cause of action for intentional infliction of emotional harm.

On September 10, 1969, plaintiff Anna Muhich, age 63, cosigned a note executed by a neighbor, Mr. Paul Perkins, who borrowed money from Family Finance Corporation ("FFC") in the principal amount of $3,432.12. Mrs. Muhich cosigned the note as a favor to Mr. Perkins. At the time the note was executed, Mrs. Muhich also executed a separate mortgage on her home to secure payment of the principal and interest. The signing of the note and the mortgage took place in the FFC office in Milwaukee where Mrs. Muhich had been taken by Mr. Perkins. Another cosigner, one Dennis Kranz, was also present. Mr. Perkins failed to make the required payments and FFC sought to collect from Mrs. Muhich. The means by which FFC sought collection, which allegedly involved intentional infliction of mental distress, gave rise to the cause of action at issue on this appeal.[1]

FFC's attempts to collect began in December, 1969, with two telephone calls to Mrs. Muhich's home by a Mr.

---

[1] The complaint in this case stated four causes of action, two of which were dismissed on motion for nonsuit, and two of which were dismissed at the close of the evidence. In her brief, plaintiff raises as issues the nonsuit of her cause of action for emotional tort, and the nonsuit of another of her causes of action, for fraud in the inducement of the mortgage. On oral argument, however, counsel for appellant made it clear that the fraud issue was not being appealed. Therefore, it is not necessary to go into the events that took place at the signing of the documents, that would go to this issue.

Lippold of FFC. In January the calls became more frequent, occurring about twice a week. Mrs. Muhich described Mr. Lippold's manner of speaking to her as "gruff" and "rough." One call was made to Mrs. Muhich at her place of work, Alverno College. There was no threat to garnish her wages or to institute suit, although she was informed that her house could be taken. The calls continued into May of 1970, but were discontinued after Mrs. Muhich's resident daughter, who took the last call, told Mr. Lippold that he was making her mother sick and nervous.

Many of these calls occurred after notice of retainer was sent by Mrs. Muhich's attorney to FFC on February 25, 1970. Mr. Tom Stanley of FFC testified that calls were made directly to Mrs. Muhich when her attorney could not be reached at either his home or office, and then only for the purpose of telling her to have her attorney contact FFC.

In addition to the telephone calls, two letters were written directly to Mrs. Muhich after retention of counsel, demanding payment. The first letter was dated June 18, 1970, from Mr. Stanley, the manager of FFC, at which time he advised her that the truck Mr. Perkins had put up as collateral has been sold for a net sum of $541; that there was a balance due and owing of $3,287.77; that the date of last payment was June 10, 1970; that the account was delinquent; that FFC had a mortgage on her home but that ". . . it is not our desire to foreclose," and asking her to "[k]indly call the undersigned and make arrangements for payment on this balance." The second letter, dated June 29, 1970, was from Attorney Sheldon D. Frank, counsel for FFC. He stated that the account was past due and said that unless immediate arrangements for payment were made, they would foreclose on the security, but it was not their wish to do so. He asked that Mrs. Muhich contact FFC directly and make arrange-

ments for payment within 48 hours, or a suit would be commenced without further notice.

On August 19, 1970, FFC commenced suit for a money judgment against Mr. and Mrs. Perkins, Dennis Kranz, and Mrs. Muhich. The trial was initially set for May 18, 1971, but it was adjourned at that time for reasons that do not appear in the record. It was then set for trial on February 15, 1972, but was deferred until March 21, 1972, because of a change in the court calendar. On March 21 the court granted a motion by the plaintiff in that action, FFC, to adjourn, over the objections of counsel for Mrs. Muhich. On June 27, 1972, the court granted a motion by FFC to dismiss their suit without prejudice. The evidence gives no indication whether Mrs. Muhich's counsel acquiesced in or objected to the dismissal.

Mrs. Muhich commenced the action involved in this appeal by service of a summons on July 18, 1972, and by service of a complaint on August 7, 1972. The complaint alleges in relevant part that FFC, "with the intent to forcefully recover the proceeds of the debt of said Perkins . . . began a harassing and aggravating course of conduct against [Mrs. Muhich] . . . which conduct was done wilfully, wantonly and in disregard of the rights of [Mrs. Muhich] and with the express intention of causing [Mrs. Muhich] mental anguish, embarrassment, humiliation and extreme mental suffering." The complaint alleges as items of harassment the sending to Mrs. Muhich of "threatening" letters, and the commencement of the legal action "in bad faith and with the express intention of forcing payment of the debt through infliction of mental anguish," and other items, such as the threat of garnishment, for which there was no proof.

Evidence was introduced to show the extent to which Mrs. Muhich had been harmed by the various activities of the defendant. She brought forth a number of witnesses who testified as to her deteriorating nervous con-

dition during the spring and summer of 1970. Her work supervisor at Alverno College testified that for health reasons Mrs. Muhich did not work during August, 1970; that after one day of work in September she left the job permanently. Mrs. Muhich had mentioned that "she was upset about this note that she had signed."

Two of Mrs. Muhich's sisters and her son and her daughter testified that she had become nervous and withdrawn during 1970 because, she told them, she had cosigned the note. Mrs. Muhich's doctor testified that he saw Mrs. Muhich in September 1970, at which time she was very nervous and apprehensive and suffered from headaches, and mentioned a problem about her responsibility for note payments as a cosigner. He did not treat her for high blood pressure at that time, but by August 1972, her blood pressure had gone up to 190/110, for which he gave her medication. He gave an opinion that the problem she had with respect to the mortgage note was a substantial factor in causing the anxiety that he saw in September 1970, and that to a reasonable medical probability, the increase in blood pressure that he saw in 1972 was secondary to a "chronic anxiety" state that followed her involvement with FFC. He also stated that the depression, including headaches and nightmares that he found on occasions after September 1970, was secondary to the "chronic anxiety" state. However, on cross-examination the doctor made it clear that the reason given by Mrs. Muhich for her anixety was her cosignature of the note, and not any patricular action by the finance company. It should also be noted that prior to all of the events involved in this lawsuit, Mrs. Muhich had been "on the limits of" high blood pressure, and had been treated for an ulcer.

At the close of Mrs. Muhich's case, which adduced the facts presented here, the trial court granted FFC's motion for nonsuit and a resulting judgment, from which Mrs. Muhich has appealed.

Both parties argue this case from the perspective of *Alsteen v. Gehl* (1963), 21 Wis. 2d 349, 124 N. W. 2d 312, a case holding that where emotional harm is intentionally inflicted and the conduct is "extreme and outrageous," physical harm need not be shown. In the alternative, plaintiff argues that she has shown sufficient physical harm—in the form of increased blood pressure —to place this case in the pre-*Alsteen* class of permitted suits for emotional harm. *See, generally: Ver Hagen v. Gibbons* (1970), 47 Wis. 2d 220, 177 N. W. 2d 83. However, we find it unnecessary to consider the application of *Alsteen* or of the physical harm requirement of *Ver Hagen*. This case was pleaded and tried strictly on a theory of intentional tort; and unless an intent on the part of FFC to emotionally harm Mrs. Muhich is shown, the questions raised in *Alsteen* or *Ver Hagen* do not arise.

We have searched this record in vain to find any evidence of intentional tort. We agree with the trial court that the evidence presented here does not show an intentional infliction of emotional harm. The phone calls referred to in the testimony fall far short of the type of conduct that might establish intentional infliction of emotional harm. The two letters discussed above certainly do not bespeak a standard of conduct designed to intentionally inflict emotional harm. The commencement and ultimate dismissal of the lawsuit by FFC, even if intended only to coerce payment of the debt—and the record is not clear as to the purpose of the dismissal—is certainly not the kind of action that can be said to be designed to inflict emotional harm. None of the witnesses testified that Mrs. Muhich attributed her physical or emotional difficulties to any action by the defendant FFC; on the contrary, she repeatedly stated that her nervous condition came about as a result of having co-signed the note and mortgaged her property, an action

on her part that (on the status of this appeal) we can only conclude was voluntarily undertaken as a favor to her neighbor, Mr. Perkins.

Even though in an appeal from a nonsuit this court is required to view the evidence in the light most favorable to the plaintiff, *Trogun v. Fruchtman* (1973), 58 Wis. 2d 569, 584, 207 N. W. 2d 297, we conclude that a reasonable trier of fact could not have found that FFC intended to inflict emotional harm on Mrs. Muhich. The motion for nonsuit was properly granted.

*By the Court.*—Judgment affirmed.