Rebecca A. WOLTRING, Plaintiff,

v.

SPECIALIZED LOAN SERVICING LLC, Defendant.

Case No. 14–C–222.

United States District Court, E.D. Wisconsin.

Signed Nov. 3, 2014.

Christine A. Wolk, Law Office of Christine Wolk, Oshkosh, WI, for Plaintiff.

Richard A. Bartolomei, II, Andrew S. Oettinger, Godfrey & Kahn SC, Milwaukee, WI, for Defendant.

## DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

WILLIAM E. CALLAHAN, JR., United States Magistrate Judge.

### I. PROCEDURAL BACKGROUND

On March 1, 2014, the plaintiff, Rebecca A. Woltring ("Woltring"), filed a complaint against defendant Specialized Loan Servic-

ing LLC ("SLS"), alleging various claims arising from a foreclosed mortgage owed by Woltring. Specifically, Woltring alleged violations of the Fair Debt Collection Practices Act ("FDCPA") and stated a second claim for relief for "Invasion of Privacy by Intrusion on Seclusion." (Compl. ¶¶ 45–50.) The case originally was assigned to United States Magistrate Judge Aaron E. Goodstein. On April 28, 2014, SLS filed a motion to dismiss Woltring's complaint, which Judge Goodstein granted in part and denied in part by decision and order dated June 16, 2014, 2014 WL 2708581. Judge Goodstein determined that the only FDCPA claims that survived SLS's motion to dismiss were those relating to a March 4, 2013 payoff letter. Woltring's second claim for relief was unaffected by SLS's motion to dismiss.

Thereafter, on July 18, 2014, Woltring filed an amended complaint that states two claims for relief: (1) violation of the FDCPA, and (2) intentional infliction of severe emotional distress (i.e., Woltring's "IIED" claim). (Am. Compl. ¶¶ 35–52.) On July 30, 2014, the case was reassigned to this court, and the parties subsequently consented to my jurisdiction. *See* 28 U.S.C. § 636(c). On August 7, 2014, SLS filed a motion to dismiss Woltring's IIED claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Woltring filed her response brief on August 28, 2014; on September 15, 2014, SLS filed its reply. Accordingly, SLS's motion to dismiss is now fully briefed and ready for resolution. For the reasons that follow, SLS's motion to dismiss Woltring's IIED claim will be denied.

## II. FACTUAL BACKGROUND

For the purpose of deciding SLS's motion to dismiss, the court accepts as true the following allegations in the plaintiff's amended complaint.

On July 13, 2006, Woltring refinanced a real estate mortgage. (Am. Compl. ¶ 8.) Mortgage ownership and servicing was transferred several times, with SLS—on behalf of the original lender, Consumer Solutions, LLC—being the last entity to service the mortgage. (*Id.* ¶¶ 9–10.) When Woltring fell behind on her mortgage payments, Consumer Solutions initiated a foreclosure action and obtained a judgment against her in the amount of $476,840.72. (*Id.* ¶¶ 11–12.)

In October 2010, Woltring requested a payoff amount from SLS. (*Id.* ¶ 13.) The payoff was overstated, and the amount due ultimately was reduced to $504,156.65 by a state court judge. Woltring requested another payoff amount in January 2011. (*Id.* ¶ 15.) SLS indicated the "estimated payoff" amount was $560,973.77, which expired five days after the payoff letter was faxed to Woltring's attorney; Woltring returned to court regarding that payoff amount. Thereafter, SLS continued to add charges to the payoff amount, and Woltring continued to dispute those additional charges. (*Id.* ¶ 16.) On or about June 28, 2011, Woltring negotiated a short payoff with SLS that required a $15,000 down payment and $500,000 due two days before the pending sheriff's sale. (*Id.* ¶ 17.) Woltring made the $15,000 down payment but was unable to pay the $500,000.

To stop the August 2011 foreclosure, Woltring filed her second Chapter 13 bankruptcy petition. (*Id.* ¶ 19.) SLS filed a Proof of Claim for an arrearage in the amount of $171,255.33 that reinstated the insurance premiums for the years Woltring had provided insurance. (*Id.* ¶ 20.) The Proof of Claim included interest that had been excluded by the state court when it entered the foreclosure judgment; a

credit was given for the pre-petition $15,000 down payment. (*Id.* ¶ 21.) Woltring objected to the Proof of Claim, asserting the amount was overstated by $40,000. (*Id.* ¶ 22.) SLS agreed to Woltring's calculation for the purposes of the bankruptcy petition. The bankruptcy petition failed. (*Id.* ¶ 23.)

The following year, Woltring filed her third Chapter 13 bankruptcy petition. (*Id.* ¶ 24.) She was able to make a $33,000 payment to SLS, which did not file a Proof of Claim in that action. Woltring alleges that she was unable to make a second lump sum payment as her health failed. (*Id.* ¶ 25.) She alleges that the ongoing stress of trying to save her home without being able to obtain a consistent and honest payoff commitment took an emotional and physical toll on her. She was unable to work and unable to think coherently. Woltring's Chapter 13 bankruptcy failed for a third time.

Woltring was diagnosed with Bell's Palsy and was hospitalized on February 4, 2013, for hypertension. (*Id.* ¶ 26.) Her doctors indicated that the Bell's Palsy and high blood pressure were caused by a combination of things, but mainly stress. As a result of suffering from Bell's Palsy, Woltring was unable to speak coherently or think clearly. (*Id.* ¶ 27.)

During this time, Woltring continued her efforts to refinance her mortgage. (*Id.* ¶ 28.) On March 4, 2013, she received an estimated payoff letter that expired on March 20, 2013. (*Id.* ¶ 29; Ex. A.) The total amount due by March 20 was $553,605.93 and was "subject to final verification by the Noteholder." (Ex. A.) The March 4, 2013 estimated payoff statement was less than prior estimated payoffs as Woltring had paid $33,000 during her 2012 bankruptcy, which "was applied to a variety of categories." (Am. Compl. ¶ 31.) The agreed upon balance due as of August 15, 2011, was $508,112.23. (*Id.* ¶ 32.) According to Woltring's calculations, the March 4, 2013 estimated payoff letter overstates the balance due by $36,116.53. (*Id.* ¶¶ 32–33.)

Woltring "sincerely believes that her symptoms ... were caused primarily by SLS behavior." (*Id.* ¶ 34.) She alleges that the misrepresented amount due set forth in the March 4, 2013 estimated payoff letter increased her frustration level, exacerbated her stress-induced Bell's Palsy, increased her struggle to control her hypertension, and prolonged her recovery and attendant risk of stroke. (*Id.*)

In support of her IIED claim, Woltring alleges that SLS "repeatedly and intentionally misstated the amount owed by adding interest, fees, [and] corporate advances not authorized by the judgment of foreclosure against [her]" and "refused to substantiate [these] excess charges." (*Id.* ¶¶ 41–42.) She further alleges that SLS knew or should have known that she was seeking financing, which required timely and accurate payoff information. (*Id.* ¶ 43.) Nevertheless, according to Woltring, "SLS continued to request payment from her for amounts in excess of what she owed." (*Id.* ¶ 43.)[1]

Woltring alleges that SLS's "conduct was such that it was designed to recklessly cause emotional distress to [her]." (*Id.* ¶ 44.) Specifically, Woltring alleges that SLS intentionally refused to give her a definitive amount due or a per diem, which allowed SLS to add additional costs and fees at will. (*Id.* ¶ 45.) She further alleges that SLS's practice of responding late to payoff requests, giving payoffs that expired in only two weeks, and providing amounts that were not supported by the

---

1. The amended complaint contains two paragraphs numbered "43."

underlying foreclosure judgment was extreme and outrageous. (*Id.* ¶ 46.) According to Woltring, "[s]tealing from middle class homeowners is conduct that is extreme and outrageous." (*Id.*) Also, in 2011, SLS intruded into a wedding for Woltring's son and announced to the gathering of family and friends that Woltring was in foreclosure.[2]

Woltring alleges that the stress created by SLS's conduct was a cause-in-fact of her injury and that the effect of the March 4, 2013 letter only delayed her recovery. (*Id.* ¶ 50.) She further alleges that she "suffered an extreme disabling emotional response to the SLS conduct that resulted in her near-stroke hospitalization." (*Id.* ¶ 51.) Also, she "was unable to function in her relationships because of the emotional distress caused by [SLS's] conduct and its manifestation in [her] facial paralysis that impaired her speech and ability to communicate." (*Id.*) Finally, Woltring alleges that she "endured serious physical and mental harm" "[a]s a result of SLS's intentional and reckless infliction of emotional distress" and, therefore, is entitled to recover for that harm. (*Id.* ¶ 52.)

## III. DISCUSSION

A motion pursuant to Fed.R.Civ.P. 12(b)(6) requires the court to decide whether the plaintiff's pleadings actually state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "The plausibility standard is not akin to a 'probability requirement.'" *Id.* Rather, a plaintiff's complaint must contain enough "[f]actual allegations ... to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. In other words, the plaintiff must "nudge[ ] [her] claims across the line from conceivable to plausible." *Id.* at 570, 127 S.Ct. 1955.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 (quoting Fed.R.Civ.P. 8(a)(2)) (alteration in original). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's as-

---

**2.** In her original complaint, Woltring alleged the following with respect to SLS's conduct concerning her son's wedding:

> On or about August 6, 2011, SLS sent an agent to WOLTRING's home. WOLTRING's son was getting married that day and the wedding party was doing set up photographs on the front porch along with the photographer and the photographer's assistant. Eleven people in all were present. Many cars were parked around the residence. It is obvious that this is a special occasion.
>
> The SLS agent approached WOLTRING and, in a voice loud enough to be heard and understood clearly by all in attendance, informed WOLTRING that she needed to contact SLS to make arrangements to cure the arrearage on her mortgage.
>
> . . .
>
> As a result of the acts of SLS, WOLTRING was humiliated, embarrassed and suffered emotional distress. Her son informed her that she had ruined his wedding and certainly, WOLTRING suffered the indignity of the spectacle in which she had involuntarily starred.

(Compl. ¶¶ 24–25, 27.)

sessment that the plaintiff will fail to find evidentiary support for [her] allegations or prove [her] claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n. 8, 127 S.Ct. 1955. While the plaintiff must provide notice to defendant of her claims, factual allegations consisting of "abstract recitations of the elements of a cause of action or conclusory legal statements" are inadequate. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir.2009). Moreover, the court is not required to "ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Gray v. Cnty. of Dane*, 854 F.2d 179, 182 (7th Cir.1988).

■ Under Wisconsin law, to recover damages for an IIED claim, a plaintiff must establish that: (1) "the defendant's conduct was intentional; that is to say, the defendant behaved as [it] did for the purpose of causing emotional distress for the plaintiff"; (2) the defendant's conduct was "extreme and outrageous"; (3) "the defendant's conduct was a cause-in-fact of [the plaintiff's] injury"; and (4) the plaintiff suffered "an extreme disabling emotional response to the defendant's conduct." *Alsteen v. Gehl*, 21 Wis.2d 349, 124 N.W.2d 312, 318 (1963).

Here, SLS argues that Woltring has failed to plead facts sufficient to establish two of these four elements. Specifically, SLS maintains that Woltring has not pled facts sufficient to show that SLS acted intentionally, or to show that SLS's actions were extreme and outrageous. In essence, SLS contends that Woltring "merely alleges SLS engaged in basic debt servicing activities" and that these activities did not rise "anywhere near" the level of being objectively extreme and outrageous. (Def.'s Br. 5–11.)

Woltring argues in response that her amended complaint provides sufficient facts to establish an IIED claim. More precisely, Woltring maintains that the following actions "clearly show[ ] that SLS's conduct was meant to cause her emotional distress": overstating the payoff amount by "tens of thousands of dollars" on several occasions notwithstanding the state foreclosure judgment; providing delayed responses to payoff requests; giving estimated payoff statements that expired in two weeks or less; and sending a property inspector to Woltring's home on the day of her son's wedding who made it clear to the guests in attendance that she was in foreclosure. (Pl.'s Resp. 5–7.) Woltring further contends that the above conduct was extreme and outrageous, likening such actions to "blackmail" and "extortion." (*Id.* at 7.)

■ To satisfy the element of intent, the "plaintiff must establish that the purpose of the conduct was to cause emotional distress." *Rabideau v. City of Racine*, 243 Wis.2d 486, 627 N.W.2d 795, 803 (2001). "[I]ntent may be evidenced by inferences from words, conduct or the circumstances in which events occurred." *Id.* However, "[t]here must be something more than a showing that the defendant intentionally engaged in the conduct that gave rise to emotional distress in the plaintiff; the plaintiff must show that the conduct was engaged in for the purpose of causing emotional distress." *Id.* To satisfy the second element, the plaintiff must establish that the defendant's conduct would be considered extreme and outrageous by an "average member of the community." *Alsteen*, 124 N.W.2d at 318. That is, "an average member of the community would find [the defendant's conduct] to be a complete denial of the individual's dignity as a person." *Gianoli v. Pfleiderer*, 209 Wis.2d 509, 563 N.W.2d 562, 567 (Wis.Ct.App.1997) (citing *Alsteen*, 124 N.W.2d at 318). "Mere care-

lessness or bad manners is insufficient." *Id.*

■ At this stage, the court must accept the facts alleged in the amended complaint as true and draw all reasonable inferences in the plaintiff's favor. Here, Woltring alleges that SLS's conduct "was such that it was designed to recklessly cause emotional distress." (Am. Compl. ¶ 44.) Specifically, Woltring has alleged that SLS intentionally overstated the payoff amount on multiple occasions over the course of several years despite a state court foreclosure judgment; SLS provided late responses to payoff requests; SLS provided conditional estimated payoff amounts that had condensed expiration time frames; and SLS sent a property inspector to Woltring's home on the day of her son's wedding who announced in front of the wedding party that Woltring was in foreclosure. (*Id.* ¶¶ 41, 45–47.) These factual allegations are sufficient, at least at the motion to dismiss stage, to support an inference that SLS's conduct was intended to cause Woltring emotional distress. In other words, whether Woltring has sufficient evidentiary support to prove that the purpose of SLS's conduct was to cause her emotional distress is an issue better left for summary judgment or trial.

■ Likewise, the above factual allegations are sufficient to meet Woltring's burden at this stage with respect to the second element of her IIED claim. SLS argues that Woltring's amended complaint "merely alleges SLS engaged in basic debt servicing activities" and that such conduct does not rise to the level of being objectively "extreme and outrageous." However, given the factual nature of IIED claims, it is not appropriate at this stage of the proceedings for the court to decide whether SLS's conduct would be considered extreme and outrageous by an average member of the community.

Rather, at the motion to dismiss stage, the court determines whether the plaintiff's complaint contains sufficient factual matter to state a claim that is plausible on its face. The court believes it does. Woltring's amended complaint contains allegations of repeated and purposeful harassing conduct that lasted for several years. One could reasonably infer that such conduct is extreme and outrageous. Indeed, it is these very same "basic debt servicing activities" that Woltring alleges constitute violations of the FDCPA in the first cause of action of her amended complaint. Accordingly, SLS's motion to dismiss Woltring's IIED claim will be denied.

**NOW THEREFORE IT IS ORDERED** that SLS's motion to dismiss Woltring's intentional infliction of emotional distress claim (ECF No. 26) be and hereby is **DENIED;**

**IT IS FURTHER ORDERED** that a scheduling conference will be conducted on *Monday, December 1, 2014, at 9:30 A.M.,* in Courtroom 242, U.S. Courthouse, 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202.