**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 7, 2018[*]
Decided December 10, 2018

**Before**

MICHAEL S. KANNE, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 16-3705

| | |
|---|---|
| JOSHUA HOWARD, | Appeal from the United States |
| *Plaintiff-Appellant*, | District Court for the Eastern District |
| | of Wisconsin. |
| *v.* | |
| | No. 14-CV-667 |
| LYNN KOELLER, | |
| and | Nancy Joseph, |
| JOHN O'DONOVAN, | *Magistrate Judge*. |
| *Defendants-Appellees*. | |

**O R D E R**

Joshua Howard, a Wisconsin inmate, was labeled a "snitch" after word got out that he gave up another inmate's name to a correctional officer in connection with a disciplinary infraction. He sued the correctional officer for intentional infliction of emotional distress and First Amendment retaliation, alleging that she lied in her report.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

He also sued the hearing officer who found him guilty, claiming he retaliated against him and violated the Equal Protection Clause. A magistrate judge, presiding by consent, entered summary judgment for the defendants on all counts. We vacate the judgment with respect to both claims against the correctional officer and otherwise affirm.

In Howard's recounting of the facts, an inmate whom Howard knew only as "Trigger" asked Howard, a known "jailhouse lawyer," to review a lawsuit that Trigger's former cellmate intended to file. Howard agreed. Later, Howard, on his way to the prison library, saw Trigger walking toward him with a manila envelope. Trigger gave the envelope to Howard. This unauthorized transfer violated prison rules.

Correctional Officer Lynn Koeller received a call from another officer who reported that she observed from a tower the exchange between Howard and inmate Edward Malave (a.k.a. "Trigger"). Koeller approached Howard in the library, and he immediately surrendered the envelope. Koeller and a librarian inspected the paperwork inside and discovered that it related to a deliberate-indifference complaint by inmate Anderson DaSilva.

The parties dispute the conversation that followed. In Koeller's account, she asked Howard "where he got the envelope," and Howard told her to "look inside." When Koeller saw documents belonging to both Malave and DaSilva, she asked Howard "which one he got it from," and Howard replied, "Malave." Howard, on the other hand, attests that Koeller asked him "who the papers belong to," not who handed them off. Howard swears that he did not know Trigger's real name, and that because Trigger gave Howard the papers on someone else's behalf, he did not know to whom they belonged. He told Koeller she could find the owner's name on the paperwork.

Koeller then issued conduct reports charging both Howard and Malave with unauthorized transfer of property and Howard with possession of contraband. In Howard's conduct report, Koeller stated that she asked Howard "who gave you the papers?" and he replied "Malave." In Malave's report, Koeller wrote: "Howard admitted to getting the envelope from Malave." The following day, Howard confronted Koeller and protested that he never told her that Malave gave him the envelope; he also said he had overcome similar charges before. According to Howard, Koeller said that it did not matter whether he "beat" the charge "because it would not change what was in the report." Howard then asked, "So you admit you put that in there on purpose?" Koeller retorted that Howard "should expect to get tickets" if he continued to help other prisoners sue the Department of Corrections. Koeller had been generally aware, for about 10 years, that Howard regularly assisted other inmates with legal work.

Disciplinary hearings followed. Captain John O'Donovan served as the hearing officer at Howard's and Malave's hearings. O'Donovan found Howard guilty of unauthorized transfer of property, but not guilty of possession of contraband. He found Malave not guilty of unauthorized transfer of property, noting that he believed Malave was unaware of the property-transfer rule and gave Howard the materials only when Howard indicated that he should. O'Donovan ordered the legal papers destroyed.

As Howard's official discipline ended, his unofficial discipline began. Malave called Howard a "snitch" and distributed copies of his conduct report so that others would see what Howard did and shun him. Howard was transferred to a segregation unit that housed inmates with behavioral and mental health issues. The inmates placed him on "no-talk" and "no-sleep" statuses: they screamed and hit their doors, walls, and toilets whenever Howard tried to speak or sleep. After several days, Howard wrote to the Psychological Services Unit complaining that he was unable to sleep because of the harassment. Howard maintains that ever since he has lived in total isolation and that he has been threatened, stolen from, and disrespected too many times to count.

Howard sued under 42 U.S.C. § 1983, and his lawsuit was eventually whittled down to four claims. First, he brought a "class of one" equal-protection claim against O'Donovan, alleging that O'Donovan discriminated against him when he found Howard, but not Malave, guilty of unauthorized transfer of property based on the same evidence. Next, he brought a claim of intentional infliction of emotional distress, under Wisconsin law, against Koeller, alleging that she lied on the conduct report intending to endanger him within the prison population. He also brought a First Amendment retaliation claim against both O'Donovan and Koeller, alleging that they disciplined him for helping other inmates file lawsuits. Ultimately, the magistrate judge entered summary judgment for the defendants on all claims.

As a preliminary matter, Howard argues that the summary-judgment decision is void because O'Donovan did not consent to the jurisdiction of the magistrate judge. *See* 28 U.S.C. § 636(c). We disagree. Consent may be implicit. *Coleman v. Labor & Indus. Review Comm'n*, 860 F.3d 461, 470 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 739 (2018) (citing *Roell v. Withrow*, 538 U.S. 580, 586–91 (2003)). And when a general consent form has been filed for other defendants in "exactly the same position"—as is the case here— consent is implied. *See DaSilva v. Rymarkiewicz*, 888 F.3d 321, 323 (7th Cir. 2018).

As to Howard's claims against O'Donovan, we conclude, first, that Howard waived his argument that O'Donovan retaliated against him by failing to develop it on appeal. *See Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014). Second, we conclude that, as the magistrate judge determined, the "class of one" equal-protection

claim fails because it challenges discretionary decision making. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008); *Abcarian v. McDonald*, 617 F.3d 931, 939 (7th Cir. 2010). Howard argues that O'Donovan had no discretion because both conduct reports involved the same transfer between Malave and Howard, and thus O'Donovan had to find both or neither of them guilty. But that is not true. When evaluating a conduct report, a hearing officer must weigh mitigating factors and defenses. *See* WIS. ADMIN. CODE § DOC 303.80(5)–(6). That is inherently discretionary.

We disagree, though, with the district court's disposition on Howard's claims against Koeller, starting with his retaliation claim. To prevail on a First Amendment retaliation claim, Howard must show that he engaged in activity protected by the First Amendment, that he suffered a deprivation that would likely deter such activity in the future, and that the protected activity was at least a motivating factor in the alleged retaliation. *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). For summary-judgment purposes, Koeller conceded that Howard engaged in protected activity. The district court ruled, however, that Howard could not establish that Koeller engaged in conduct that would likely deter future protected activity or that she had a retaliatory motive.

But in reaching this conclusion, the court impermissibly resolved a disputed issue of material fact. Although it acknowledged that "[t]he parties dispute whether Howard told Koeller … that Malave gave him the envelope," it said that "the facts do not support a finding that [Koeller] fabricated a statement in the conduct report." These statements are inconsistent: If Howard did not tell Koeller that Malave gave him the envelope, then Koeller did lie in the conduct report. When ruling on a motion for summary judgment, the court must rely upon only undisputed facts and can resolve disputes only in the non-movant's favor. *See Hess v. Bd. of Trustees*, 839 F.3d 668, 673 (7th Cir. 2016). Koeller does not point to any evidence that would preclude a reasonable jury from crediting Howard's sworn account that Koeller asked him who *owned* the papers and that he did not know, and further that Howard did not even know "Trigger's" real name. From these facts, a jury could infer that Koeller intentionally fabricated her statements in the reports; therefore, the fact could not be resolved against Howard.

Further, if Koeller lied, a reasonable jury could find that her conduct would deter "a person of ordinary firmness" from engaging in future First-Amendment activity. The alleged untruth subjected Howard to constant threats and harassment. It is widely acknowledged that being branded a "snitch" in prison presents grave risks to an inmate's safety. *See, e.g., Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008) ("[I]t's common knowledge that snitches face unique risks in prison."). There is no dispute about

whether Howard was punished in the prison population for being an informant; the only question is whether Koeller accurately reported that he was one. That is a factual dispute that precludes summary judgment.

The district court's finding that Koeller did not lie on the report also tainted its conclusion that Howard's jailhouse lawyering was not a motivating factor in her conduct; that element was beside the point once the district court concluded that the retaliatory conduct did not occur. At summary judgment, the plaintiff must produce evidence supporting an inference that his speech was at least a motivating factor in the alleged retaliation; then, the burden shifts to the defendant to rebut the causal inference. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965–66 (7th Cir. 2012). In addition to the close temporal proximity of Koeller's alleged fabrication to her review of legal materials Howard intended to work on, Howard testified to two statements that could suggest a retaliatory motive. First, Koeller said that he should expect disciplinary action so long as he continued to help other prisoners file lawsuits. Second, she told him that it did not matter whether he "beat" the conduct report because the intended damage was done. If a jury believed Howard, it could reasonably conclude that his protected activity and the false conduct report are "not wholly unrelated." *Id.* at 966 (citations omitted).

Koeller argues, and the district court agreed, that she was aware of Howard's jailhouse lawyering for ten years—implying, apparently, that if Koeller wanted to retaliate, she would have done so a long time ago. This speculation alone does not rebut the evidence of causation. The district court also noted—presumably to further support its conclusion that Koeller had no reason to lie—that another officer witnessed the envelope exchange, so Malave's identity "was not new or previously unknown information." But Howard does not dispute the identification of Malave—only that he was *the source* of that identification.

Qualified immunity does not shield Koeller. Citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), she argues that "there are no analogous cases that would give [her] notice 'beyond debate' that the First Amendment prohibits [her] from reporting that an inmate provided the name of another inmate within a conduct report." But that is not an accurate characterization of what Howard alleges. As the Supreme Court repeatedly has admonished, the right at issue when qualified immunity is invoked must be specifically tailored to the alleged conduct at issue, not defined at a high level of generality. *See Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018). Howard alleges that Koeller made deliberate misrepresentations in disciplinary reports with the intent to trigger a punitive response from other inmates. Koeller does not argue that a reasonable prison

official would be unaware that *this* deliberate misconduct violated Howard's constitutional rights, so qualified immunity does not protect her.

Lastly, we conclude that it remains possible that a reasonable jury might find in Howard's favor on his intentional infliction of emotional distress claim. In concluding that Koeller did not engage in "extreme or outrageous" conduct or intend to cause emotional distress, the district court primarily relied upon its factual determination that Koeller did not intentionally lie on the conduct reports. Without this factual premise, the tort claim looks different.

To be sure, the task of proving intentional infliction of emotional distress under Wisconsin law is an onerous one. Howard must ultimately show that Koeller's conduct was so extreme and outrageous that "an average member of the community" would find her behavior "a complete denial of [Howard's] dignity as a person." *See Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1559–60 (7th Cir. 1991). Conduct that is merely unreasonable is insufficient. *Alsteen v. Gehl*, 124 N.W.2d 312, 318 (Wis. 1963). But, "[i]f one person treats another as an object to be deliberately manipulated, humiliated, and scorned, he ought to be compelled to compensate that person for any disabling emotional response caused by his conduct." *Id.* at 317. Koeller does not argue that Howard cannot meet that standard as a matter of law; she argues only that "telling the truth … is neither extreme nor outrageous." As noted, however, a jury must decide whether she told the truth. Howard will also have to prove that he suffered extreme and disabling harm as a result of Koeller's conduct; again, this is a high bar. But if we draw reasonable inferences in Howard's favor, his description of his total isolation and the constant threat he lives under is more than "temporary discomfort," and we cannot say that no reasonable jury could find in his favor. *See id.* at 318 ("The plaintiff must demonstrate that he was unable to function in his other relationships because of the emotional distress caused by defendant's conduct.").

The judgment of the district court in Koeller's favor on the First Amendment retaliation and intentional infliction of emotional distress claims is VACATED and REMANDED for proceedings consistent with this order. In all other respects, the judgment is AFFIRMED.